Carl Daniel LOCKETT, Petitioner,

v.

S.W. PUCKETT, Commissioner,
Mississippi Department of
Corrections, Respondent.

Civ. A. No. 3:94–CV–658BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

Oct. 16, 1997.

David Boies, Jeffrey L. Friesen, Paul M. Dodyk, Cravath, Swaine & Moore, New York City, Julie A. Epps, Jackson, MS, William S. Moore, Jackson, MS, Andre' L.V. de Gruy, Jackson, MS, for Daniel Lockett.

Leslie S. Lee, Marvin L. White, Jr., Office of the Attorney General, Jackson, MS, for Edward Hargett.

*OPINION AND ORDER*

BARBOUR, District Judge.

This cause is before the Court on the Petition Under Title 28 U.S.C. Section 2254 for Writs of Habeas Corpus by a Petitioner in State Court Custody Under Sentences of Death filed on behalf of the Petitioner, Carl Daniel Lockett ("Lockett"). Lockett has also filed a Motion for Partial Summary Judgment and a Motion for an Evidentiary Hearing. On August 30, 1996, this Court issued an Order granting in part Petitioner's Motion for an Evidentiary hearing limited in scope to the following issues:

1. Competency of the Petitioner Carl Daniel Lockett to stand trial; and

2. Ineffective assistance of trial counsel for failure to raise the issue of Petitioner's competency to stand trial and for failure to present any evidence of diminished mental capacity in the sentencing phase of Petitioner's trials.

August 30, 1996, Order at 1. On February 27 and 28, 1997, an evidentiary hearing was held, and both Petitioner and Respondent (hereinafter "the State") presented testimony from witnesses and submitted various documents into evidence. Having considered the entire court file in this matter, including the transcripts of both trials, and all the documents submitted by the parties, including supporting and opposing memoranda, and having considered the evidence presented at the evidentiary hearing, the Court finds as follows: (1) the Petition Under Title 28 U.S.C. Section 2254 for Writs of Habeas Corpus by a Petitioner in State Court Custody Under Sentences of Death should be granted in part such that the sentence of death imposed on Lockett for the murder of John Earl Calhoun should be vacated; all other grounds for relief raised in the Petition should be denied; (2) the Motion for Partial Summary Judgment should be granted in part such that the sentence of death imposed on Lockett for the murder of John Earl Calhoun should be vacated; all other issues raised in the Motion for Partial Summary Judgment should be denied; and (3) the Mo-

tion for Evidentiary Hearing should be denied in part.[1]

## I. *Factual Background* [2]

During the early morning hours of December 13, 1985, Lockett arose and, carrying a .32 caliber pistol and a .22 caliber rifle, walked through the woods to the home of Mr. and Mrs. John Calhoun in Rankin County. Longtime residents of the small Puckett community, the Calhouns lived with their two teenage sons a short distance from the home Lockett shared with his brother and sister.

Lockett crept up toward the back of the Calhoun house and waited until he saw John Calhoun and his two sons leave. He then walked to the carport and, believing that Calhoun would return soon, walked through the door into the house. On seeing Mrs. Calhoun seated watching television, Lockett grabbed her and forced her through the various rooms of the house, "looking for things."

Shortly thereafter Mr. Calhoun returned and drove his car into the driveway. Lockett hid behind the door and responded to Mrs. Calhoun's pleas for mercy with an order for her to "be quiet." As Mr. Calhoun walked through the front door, Lockett launched a volley of gunfire from the .32 pistol. Although Mr. Calhoun was struck by the first shot, Lockett fired 3–4 more times.

It was stipulated at trial that John Calhoun was killed, as his wife watched, by three .32 caliber gunshot wounds to the left chest, right chest and back. It was further stipulated that the bullets came from a gun matching the type seized in a later search of Lockett's bedroom.

Despite Mrs. Calhoun's pleas that he go ahead and kill her at the house rather than

force her to leave with him, Lockett forced her to remove her dead husband's wallet, grabbed her and marched her to her car. He took the credit cards from John Calhoun's wallet and drove Mrs. Calhoun to a nearby abandoned egg house owned by Lockett's grandmother. Mrs. Calhoun was executed by Lockett's two rifle shots to her head. The defense stipulated that Mrs. Calhoun's wounds were inflicted by a .22 caliber rifle of the type removed from the defendant's bedroom during the later search. Thereafter, Lockett stripped the Calhouns' car, hid the car parts in the egg house, and walked back through the woods to his house. Once there, he hid the guns and credit cards and went to sleep.

John Calhoun's body was found by his brother within an hour or two of the killing. An intensive investigation followed involving bloodhounds. Later that same day, officers found Mrs. Calhoun's body, the stashed car parts, and the abandoned car. Officers also recovered from the egg house a spiral composition book bearing the name of Carl Lockett. Further development of leads led authorities to obtain a warrant and search Lockett's room,[3] a search which uncovered both murder weapons (which had been stolen in earlier community burglaries), John Calhoun's credit cards and a blank check bearing the Calhoun name.

Thereafter, Lockett was taken into custody. After waiving his rights at the Rankin County Sheriff's office, Lockett confessed. Subsequently, another waiver was made and Lockett tendered a complete tape-recorded account of the crime.

*Lockett v. State,* 517 So.2d 1317, 1320–21 (Miss.1987).

---

**1.** By Order dated August 30, 1996, this Court granted in part the Motion for Evidentiary Hearing limited to the issues set forth *supra* at 207.

**2.** In his Petition for Writs of Habeas Corpus and all other supporting documents, Lockett does not set forth the factual background concerning the actual murders of John Earl and Geraldine Calhoun. The factual background set forth in this opinion is quoted from Lockett's direct appeal to the Mississippi Supreme Court of his conviction

of murder and sentence of death for the murder of John Earl Calhoun. *Lockett v. State,* 517 So.2d 1317 (Miss.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).

**3.** In his Petition, Lockett asserts that his trial counsel was ineffective for failing to challenge the validity of the search warrant by examining the contradictory testimony of certain witnesses for the State.

## II. *Procedural History*

### A. *Murder of John Calhoun: Case 1* [4]

Lockett was indicted in the Circuit Court of Rankin County, Mississippi, for the murder of John Calhoun. Following a change of venue, Lockett was tried in the Circuit Court in Pascagoula, Mississippi, with the Honorable Robert L. Goza, Rankin County Circuit Judge, presiding. On April 2, 1986, a jury convicted Lockett of the capital murder of John Calhoun and, after hearing further testimony, sentenced him to death. Lockett filed various post-trial motions, all of which were denied. Lockett was represented at the trial by William O. Townsend ("Townsend") and David Clark.

Lockett appealed his conviction and sentence to the Mississippi Supreme Court, and all assignments of error were denied. Lockett was represented by Clive A. Stafford Smith in his direct appeal. Lockett filed a Petition for Writ of Certiorari to the United States Supreme Court which was also denied. *Lockett v. State*, 517 So.2d 1317 (Miss.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). Lockett was represented by Robert E. Morin in his Petition for Certiorari.

Lockett filed a Motion to Vacate or Set Aside Judgment, Conviction and Sentence of Death in a post-conviction proceeding. The Motion was denied by the Mississippi Supreme Court, and a subsequent Petition for Writ of Certiorari to the United States Supreme Court was denied. *Lockett v. State*, 614 So.2d 888 (Miss.1992), *cert. denied*, 510 U.S. 1040, 114 S.Ct. 681, 126 L.Ed.2d 649 (1994). Lockett was represented by Rebecca Wiggs ("Wiggs") in the post-conviction proceeding, and by Wiggs and James W. Craig ("Craig") in his Petition for Certiorari.

Lockett filed a second Motion to Vacate or Set Aside Judgment, Conviction and Sentence of Death, and the Motion was denied by the Mississippi Supreme Court. A subse-

quent Petition for Writ of Certiorari to the United States Supreme Court was also denied. *Lockett v. State*, 656 So.2d 68 (Miss.), *cert. denied*, 515 U.S. 1150, 115 S.Ct. 2595, 132 L.Ed.2d 842 (1995). Lockett was represented by Craig, Julie Ann Epps and W.S. Moore in these proceedings.

### B. *Murder of Geraldine Calhoun: Case 2* [5]

Lockett was indicted in the Circuit Court of Rankin County, Mississippi, for the murder of Geraldine Calhoun. Following a change of venue, Lockett was tried in the Circuit Court in Lamar County, Mississippi, with the Honorable Alfred G. Nicols, Jr., Rankin County Circuit Judge, presiding. On May 6, 1986, a jury convicted Lockett of the capital murder of Geraldine Calhoun and, after hearing further testimony, sentenced him to death. Lockett filed various post-trial motions, all of which were denied. Lockett was represented in both phases of Case 2 by Townsend, Cullen C. Taylor and William E. Andrews, III.[6]

Lockett appealed his conviction and sentence to the Mississippi Supreme Court, and all assignments of error were denied. Lockett filed a Petition for Writ of Certiorari to the United States Supreme Court which was also denied. *Lockett v. State*, 517 So.2d 1346 (Miss.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988).

Lockett filed a Motion to Vacate or Set Aside Judgment, Conviction and Sentence of Death in a post-conviction proceeding. The Motion was denied by the Mississippi Supreme Court, and a subsequent Petition for Writ of Certiorari to the United States Supreme Court was denied. *Lockett v. State*, 614 So.2d 898 (Miss.1992), *cert. denied*, 510 U.S. 1040, 114 S.Ct. 681, 126 L.Ed.2d 649 (1994).

Lockett filed a second Motion to Vacate or Set Aside Judgment, Conviction and Sentence of Death, and the Motion was denied by the Mississippi Supreme Court. A subse-

---

4. The Court will refer to the proceedings involving Lockett's conviction for the murder of John Calhoun as "Case 1."

5. The Court will refer to the proceedings involving Lockett's conviction for the murder of Geraldine Calhoun as "Case 2."

6. In his direct appeal and post-conviction proceedings in Case 2, Lockett was represented by the same counsel as set forth previously regarding Case 1. The Court, therefore, will not reiterate that same information with regard to Case 2.

quent Petition for Writ of Certiorari to the United States Supreme Court was also denied. *Lockett v. State,* 656 So.2d 76 (Miss.), *cert. denied,* 515 U.S. 1150, 115 S.Ct. 2595, 132 L.Ed.2d 842 (1995).

### C. *Petition in This Court*

Lockett has now filed a Petition Under Title 28 U.S.C. Section 2254 for Writs[7] of Habeas Corpus by a Petitioner in State Court Custody Under Sentences of Death. In his Petition, Lockett asserts that all of the asserted grounds for relief have been previously presented in state court, Petition at 36, ¶ 13, and the State does not contest that Lockett has exhausted his state court remedies. The Court will address each ground raised in the Petition.[8] Before doing so, however, the Court will set forth the applicable standard of review which this Court must use in deciding whether the grounds alleged in the Petition warrant the granting of habeas relief for Lockett's convictions and death sentences in Case 1 and Case 2.

### III. *Applicable Legal Standard*

■ Lockett filed his Petition in this Court on November 20, 1995. On April 24, 1996, the President signed into law the Anti–Terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104, 132, 110 Stat. 1214 (1996) ("AEDPA"), amending various por-

tions of the statutes governing the consideration of habeas petitions by federal courts. *See* 28 U.S.C. §§ 2244, 2253, 2254 and 2255, *as amended by* the AEDPA. The State, relying upon *Drinkard v. Johnson,* 97 F.3d 751, 765–66 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997), argues that the provisions of the AEDPA should apply to this case.[9] After the briefing was completed in this case and several months after this Court conducted an evidentiary hearing, the United States Supreme Court decided the case of *Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), concluding that the provisions of chapter 153[10] of the AEDPA "generally apply only to cases filed after the Act became effective." *Id.* at ——, 117 S.Ct. at 2068. The United States Court of Appeals for the Fifth Circuit has now recognized that the *Lindh* decision overrules *Drinkard* and its progeny, to the extent that those cases applied the AEDPA retroactively to habeas petitions which were filed prior to April 24, 1996. *Green v. Johnson,* 116 F.3d 1115, 1119–20 (5th Cir.1997). Because the instant Petition was filed prior to the enactment of the AEDPA, the Court will apply pre–AEDPA law to the issues raised by the Petitioner in this case.[11]

---

7. The Petition seeks to overturn Lockett's convictions and sentences for the murders of John Calhoun and Geraldine Calhoun. Because Lockett is subject to a separate conviction and sentence for each murder, he seeks to obtain separate writs of habeas corpus for each conviction and sentence.

8. Because all of the grounds asserted here have been previously presented to the state court, the Court has not listed each ground for relief asserted by Lockett in each of the various appeals and motions decided by the Mississippi Supreme Court.

9. The new standards set forth in the AEDPA change the process for federal court review of habeas petitions. Rather than reviewing the asserted grounds for relief in a habeas petition, the new provisions require federal courts to perform a very deferential review of the state court decision on each asserted ground. *See* 28 U.S.C. § 2254(d) (1996). This standard of review, in the opinion of the Court, is much stricter than the pre–AEDPA standard of review on any given issue.

10. Chapter 153 of Title 28 of the United States Code encompasses sections 2244 and 2253–2255,

which are the provisions governing habeas proceedings in federal courts.

11. Congress enacted an entirely new chapter 154, the provisions of which are applicable for habeas proceedings against a state in capital cases. *Lindh,* —— U.S. at ——, 117 S.Ct. at 2063. Congress stated explicitly that the provisions of chapter 154 "shall apply to cases pending on or after the date of enactment of this Act." *Id.* at ——, 117 S.Ct. at 2063. Chapter 154 is only applicable, however, "where states have elected to opt in and have qualified to participate by meeting the requirements of § 107." *Green,* 116 F.3d at 1120. In order for a state to opt in, 28 U.S.C. § 2261(b) requires the state to establish "a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners whose capital convictions and sentences have been upheld on direct appeal...." Mississippi has not established any mechanism for the appointment of counsel in state post-conviction proceedings, and therefore may not take advantage of the "special rules favorable to" the states set forth in chapter 154. *Lindh,* —— U.S. at ——, 117 S.Ct. at 2063.

IV. *Analysis*

**Ground One:** *The "especially heinous, atrocious, or cruel" instruction given to Petitioner's juries was vague in violation of the Eighth and Fourteenth Amendments to the United States Constitution and requires new trials.*[12]

The juries in Case 1 and Case 2 were instructed as follows with regard to the "especially heinous, atrocious and cruel" aggravating factor:

> The Court instructs the jury that the term "especially heinous, atrocious or cruel" as used elsewhere in these instructions is defined as being a conscienceless or pitiless crime which is unnecessarily torturous to the victim.

Sentencing Instruction 2, Case 1 (R. 663); Case 2 (R. 664). Lockett asserts that this instruction is unconstitutionally vague in violation of the Eighth and Fourteenth Amendments to the United States Constitution as interpreted by the United States Supreme Court. Specifically, in *Maynard v. Cartwright*, 486 U.S. 356, 363–64, 108 S.Ct. 1853, 1859, 100 L.Ed.2d 372 (1988), the Supreme Court concluded that some of the language

used to define the challenged aggravating circumstance—"especially heinous, atrocious, or cruel"—was unconstitutionally vague.[13] *See also Clemons v. Mississippi*, 494 U.S. 738, 742–43, 110 S.Ct. 1441, 1445, 108 L.Ed.2d 725 (1990) (invalidating an instruction containing only the "bare terms of the Mississippi statute" allowing the jury to consider in aggravation whether the murder was "especially heinous, atrocious, or cruel"). In *Stringer v. Black*, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), the Supreme Court declared that a habeas petitioner could rely on the *Maynard* holding, even if his conviction became final before that decision, because the decision was not a new decision.[14]

■ The task for this Court is to determine whether the language used in the instructions given in both of Lockett's trials is constitutionally sufficient pursuant to this line of Supreme Court cases. This inquiry is a purely legal question which the Court will review *de novo*.

The decisions by the Mississippi Supreme Court addressing the merits of this issue as to both of Lockett's trials are identical:

**12.** In his Petition and Brief in Support of Motion for Partial Summary Judgment, Petitioner argues that he is entitled to be resentenced, rather than entitled to new trials, if the Court grants habeas relief pursuant to Ground One. The Court agrees, and finds that this particular ground only applies to the sentencing phase of each of Petitioner's trials.

**13.** The jury at Cartwright's trial was instructed that:

> "the term 'heinous' means extremely wicked or shockingly evil; 'atrocious' means outrageously wicked and vile; and 'cruel' means pitiless, or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others."

*Cartwright v. Maynard*, 822 F.2d 1477, 1488 (10th Cir.1987), *aff'd*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Although the Supreme Court did not quote or discuss this particular language in its opinion, that Court affirmed the holding of the Tenth Circuit that such language does not sufficiently define the "especially heinous, atrocious, or cruel" aggravating circumstance. *Id.* at 1488–90; *Maynard*, 486 U.S. at 365, 108 S.Ct. at 1859.

**14.** *Maynard* relied on *Godfrey v. Georgia*, 446 U.S. 420, 422, 100 S.Ct. 1759, 1762, 64 L.Ed.2d

398 (1980), a decision which invalidated an aggravating circumstance allowing "a person to be sentenced to death if the offense 'was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.'" *Maynard*, 486 U.S. at 362, 108 S.Ct. at 1858 (quoting *Godfrey*, 446 U.S. at 422, 100 S.Ct. at 1761). The *Godfrey* Court concluded that the language was unconstitutionally vague reasoning that:

> There is nothing in these few words, standing alone, that implies any inherent restraint on the arbitrary and capricious infliction of the death sentence. A person of ordinary sensibility could fairly characterize almost every murder as 'outrageously or wantonly vile, horrible and inhuman.' Such a view may, in fact, have been one to which the members of the jury in this case subscribed. If so, their preconceptions were not dispelled by the trial judge's sentencing instructions. These gave the jury no guidance concerning the meaning of any of [the aggravating circumstance's] terms. In fact, the jury's interpretation of [that circumstance] can only be the subject of sheer speculation.

*Maynard*, 486 U.S. at 363, 108 S.Ct. at 1858–1859 (quoting *Godfrey*, 446 U.S. at 428–29, 100 S.Ct. at 1765).

In Mississippi, the proper instruction defining the especially heinous aggravating factor comes from *Coleman v. State*, 378 So.2d 640, 648 (Miss.1979): "the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies—the conscienceless or pitiless crime which is unnecessarily torturous to the victim." Lockett received such an instruction at his sentencing trial in Sentencing Instruction 2: "The Court instructs the Jury that the term 'especially heinous, atrocious, or cruel', as used elsewhere in these instructions is defined as being a conscienceless or pitless [sic] crime which is unecessarily [sic] torturous to the victim." *The instruction, as given, tracks the Coleman language. Therefore, the jury in Lockett's case was properly instructed on the especially heinous aggravating factor.* This claim is without merit.

*Lockett,* 614 So.2d at 904–05 (emphasis added); *Lockett* 614 So.2d at 896 (emphasis added). Lockett argues that the essential portion of the *Coleman* language—"the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies"—was not included in the instructions in his trials. The omission of this language, according to Lockett, failed to properly channel the discretion of the jury as required by *Maynard.* In rebuttal to the argument of the State that the instruction contains a proper limiting definition, Lockett asserts that "Respondents present no cases—either from Mississippi or anywhere else—upholding the constitutionality of such a 'definition.' There are none." Memorandum in Rebuttal at 3.

The Court agrees with the decisions of the Mississippi Supreme Court, concluding that Instruction 2 given in each of Lockett's trials contained a proper limiting definition of the especially heinous, atrocious or cruel aggravating factor. Lockett's argument that no cases exist upholding the constitutionality of this instruction is not persua-

sive. The United States Supreme Court has recognized that more than one construction of this particular aggravating circumstance is permissible:

In *Maynard v. Cartwright,* we expressed approval of a definition that would limit Oklahoma's "especially heinous, atrocious, or cruel" aggravating circumstance to murders involving "some kind of torture or physical abuse," . . . *but we also noted that such a construction was not the only one "that would be constitutionally acceptable."*

*Walton v. Arizona,* 497 U.S. 639, 654–55, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990) (emphasis added) (quoting *Maynard,* 486 U.S. at 364–65, 108 S.Ct. at 1859). Thus, even though the United States Supreme Court has implicitly recognized the validity of the *Coleman* language as being a "proper definition" for the especially heinous aggravating factor, *Clemons,* 494 U.S. at 751, 110 S.Ct. at 1450,[15] such recognition may not be viewed as a holding that such language is the *only* proper limiting instruction. Furthermore, in *Clemons,* the Supreme Court, discussed the decision of the Mississippi Supreme Court in the following terms:

The Mississippi Supreme Court distinguished this case from *Maynard* and sustained Clemons' death sentence on the following grounds: . . . (2) the Mississippi Supreme Court has previously given the "especially heinous" factor a constitutional limiting construction, *narrowing that category to murders that are conscienceless or pitiless and unnecessarily torturous to the victim* . . . .

*Id.* at 743–44, 110 S.Ct. at 1445–1446. While such language is not a holding that the emphasized language is the proper limiting construction of the "especially heinous" aggravating factor, it is certainly worth noting that the Supreme Court chose only this language in setting forth the issues addressed by the Mississippi Supreme Court. For these reasons, this Court will not disturb the conclu-

---

**15.** In discussing the decision of the Mississippi Supreme Court, the Supreme Court in *Clemons* states that "[a]t one point the court recites the proper limiting construction of the 'especially

heinous' aggravating factor . . . ." *Id.* at 751, 110 S.Ct. at 1449. This reference is to the *Coleman* definition of this factor.

sion of the Mississippi Supreme Court that the challenged instruction sufficiently tracks the *Coleman* language so as to properly channel the discretion of the juries during the sentencing phase of Lockett's trials. Lockett is not entitled to habeas relief based upon this ground.

**Ground Two:** *Petitioner was deprived of his right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution during both phases of his trials and on direct appeal.*

Lockett alleges that his trial counsel was ineffective in the guilt and sentencing phases in both of his trials. The Court will address the allegations concerning each phase separately. Furthermore, each issue addressed by the Court pertains to both Case 1 and Case 2 unless otherwise indicated.

### 1. *Guilt Phase*

Lockett asserts that his trial counsel erred in the following ways during the guilt phase of each trial:

1. Failure to request a competency hearing despite Petitioner's organic brain damage and Dissociative Identity Disorder.

2. Failure to argue Petitioner's capacity to commit the crime.

3. Failure to examine the search warrant before the suppression hearing concerning that warrant.

4. Failure to cross-examine government witnesses concerning their flatly contradictory testimony regarding when Petitioner signed a waiver of rights form.

5.* Failure to object to the validity of the indictments.

6. Failure to inquire sufficiently into the identity of the State's "confidential informant."

7. Failure to investigate other persons potentially involved in the crime despite the fact that the police had interrogated another suspect and Petitioner's statement that another person had "been the lookout."

8. Failure to rehabilitate jurors regarding their views on the death penalty.

9. Failure to make an opening statement or present a single witness.

10.* Failure to raise the issue of or cross-examine Sheriff Torrence regarding his reported statement to Petitioner before the confession that "you have to account for that when Judgment Day comes."

11.* Failure to object to the jury instructions which failed to set forth the essential elements of burglary and failed to provide Petitioner with a unanimous verdict.

Petition at 24–25. The issues marked with an asterisk(*) will be addressed substantively in subsequent portions of this opinion.

### 2. *Sentencing Phase*

Lockett charges that he was deprived of his right to effective assistance of counsel at the sentencing phase of each trial by his overburdened and distracted trial counsel. Specifically, Lockett asserts that his trial counsel erred in the following ways:

1. Failure to present evidence in mitigation, despite information available to him by reasonable investigation (including family member interviews, medical tests, or a client interview for more than the forty-five minutes that counsel met with Petitioner) such as Lockett's organic brain damage, Dissociative Identity Disorder, drug and alcohol abuse, "blackouts," troubled family background, emotional disturbances, helpfulness to his sister's children.

2. Failure to investigate Petitioner's single prior conviction for auto theft, which occurred because Petitioner was helping a child escape from an abusive home.

3. Failure to counter the prosecutions' arguments regarding each of the aggravating circumstances.

4. Failure to explain to the juries the manner in which they should weigh the aggravating and mitigating circumstances.

5.* Failure to point out to the juries that there was no evidence to support the "heinous, atrocious, or cruel" aggravating circumstance.

6.* Failure to object to statements made by the prosecutor which amounted to prosecutorial misconduct, including numerous improper comments on the possibility of parole.

7.* Failure to object to the submission of the same underlying felonies used to elevate the charge to capital murder to elevate it once again in the penalty phase.

Petition at 24–25. The issues marked with an asterisk(*) will be addressed substantively in subsequent portions of this opinion.

### 3. *Legal Standard*

■ To merit habeas corpus relief on a claim of ineffective assistance of counsel, Lockett must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). Lockett can only satisfy the first prong of this test if he demonstrates that his counsel's errors were so egregious that he was deprived of the "counsel" guaranteed by the Sixth Amendment. *Id.* at 691, 104 S.Ct. at 2066. In order to show prejudice, Lockett must prove that the challenged conduct of his counsel rendered the proceeding "fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064).

■ In analyzing Lockett's claim of ineffectiveness, the Court must engage in the strong presumption that trial counsel's performance fell within the wide range of professional competence and that the original verdict was reliable. *See Sawyer v. Butler*, 848 F.2d 582 (5th Cir.1988), *superseded on other grounds, Sawyer v. Butler*, 881 F.2d 1273 (5th Cir.1989); *Lavernia v. Lynaugh*, 845 F.2d 493 (5th Cir.1988); *Bridge v. Lynaugh*, 838 F.2d 770 (5th Cir.1988); *Thomas v. Lynaugh*, 812 F.2d 225 (5th Cir.), *cert. denied*, 484 U.S. 842, 108 S.Ct. 132, 98

L.Ed.2d 89 (1987); *Martin v. McCotter*, 796 F.2d 813 (5th Cir.1986), *cert. denied*, 479 U.S. 1057, 107 S.Ct. 935, 93 L.Ed.2d 985 (1987). In discussing the *Strickland* standard, the United States Court of Appeals for the Fifth Circuit has noted the following:

> In determining whether counsel's performance satisfies the requirements of the Sixth Amendment, we must inquire whether, considering all the circumstances, counsel's performance was reasonable under prevailing professional norms. Judicial scrutiny of counsel's performance must be highly deferential; we must make every effort to eliminate the distorting effects of hindsight and evaluate the conduct from counsel's perspective at the time.

*Lavernia*, 845 F.2d at 498.

■ It is not enough to show that some, or even most, defense lawyers would have handled the case differently. *Green v. Lynaugh*, 868 F.2d 176, 178 (5th Cir.), *cert. denied*, 493 U.S. 831, 110 S.Ct. 102, 107 L.Ed.2d 66 (1989). As the Supreme Court has observed, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after a conviction." *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. It is likewise too facile "for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Green*, 868 F.2d at 178 (citing *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065).

■ The prejudice prong of the *Strickland* test requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *see also Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995). The Fifth Circuit has recognized that the prejudice inquiry has been further narrowed by the Supreme Court: "[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is

defective." *Armstead v. Scott,* 37 F.3d 202, 206–07 (5th Cir.1994) (citing *Lockhart,* 506 U.S. at 372, 113 S.Ct. at 844), *cert. denied,* 514 U.S. 1071, 115 S.Ct. 1709, 131 L.Ed.2d 570 (1995). An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Summit v. Blackburn,* 795 F.2d 1237, 1242 (5th Cir.1986). A habeas corpus petitioner must affirmatively plead this resulting prejudice. *Bridge v. Lynaugh,* 838 F.2d 770, 773 (5th Cir.1988).

■ Because both the deficiency and prejudice prongs of the ineffectiveness inquiry are mixed questions of law and fact, this Court must make an independent determination of whether counsel's representation satisfied the Sixth Amendment. *Martin v. McCotter,* 796 F.2d 813, 817 (5th Cir.1986) (citing *Mattheson v. King,* 751 F.2d 1432, 1438 (5th Cir.1985), *cert. dismissed,* 475 U.S. 1138, 106 S.Ct. 1798, 90 L.Ed.2d 343 (1986)). The Court has considered all instances of Lockett's claims of ineffectiveness of counsel but will discuss below only those claims relating to the ineffectiveness of trial counsel for failure to raise the issue of Lockett's competency to stand trial and for failure to present any evidence of diminished mental capacity in the sentencing phase of Lockett's trials. All instances not specifically discussed below unquestionably failed to meet the deficiency and/or prejudice prong of *Strickland* and, accordingly, are found to be without merit.

### 4. *Analysis*

The Court finds that the instances of ineffectiveness of counsel alleged by Lockett did not affect the guilt or sentencing phases of the trials, nor did they render the guilty verdicts and subsequent death sentences unfair or unreliable. In examining the alleged instances of ineffective assistance of trial counsel, the Court notes that Lockett was represented in both phases of Case 1 by William O. Townsend ("Townsend") and David Clark, and both phases of Case 2 by Townsend, Cullen C. Taylor and William E. Andrews, III. *Lockett,* 614 So.2d at 894 and *Lockett,* 614 So.2d at 903.

■ The thrust of Lockett's allegations regarding trial counsel's ineffectiveness concern Lockett's mental capacity. First, Lockett asserts that the failure of his trial counsel to request a competency hearing, despite his organic brain damage and Dissociative Identity Disorder, constitutes ineffectiveness. Petition at 24. Second, Lockett contends that his trial counsel's failure to present mitigation evidence in the sentencing phases regarding his organic brain damage and Dissociative Identity Disorder was ineffective assistance of counsel. Petition at 24–25.

#### a. *Competency to Stand Trial*

The record reflects that in Case 1, Lockett's trial counsel filed a motion for a private psychiatric and psychological examination of his client. Circuit Court Judge Robert L. Goza entered an order granting this motion. The order required that Lockett be psychiatrically evaluated by Dr. Timothy Summers ("Summers") and psychologically evaluated by a psychologist chosen by Summers. Exhibit S–10.[16] The order specifically stated:

> IT IS HEREBY ORDERED AND ADJUDGED that immediately upon the completion of the psychiatric and psychological evaluations that Dr. Timothy Sum[m]ers and the psychologist of his choosing specifically advise the Court on their opinions as to whether or not the Defendant knew and appreciated the difference between right and wrong on December 13, 1985, the date the alleged crimes were committed, and as to their opinions as to whether the Defendant is competent to stand trial and capable of assisting his counsel in preparing his defense in these causes.

Exhibit S–10.

On March 7, 1986, Summers wrote a letter to Townsend stating that in order to perform a complete evaluation of Lockett, he had scheduled several tests, including an Electro-

---

16. As stated previously, the Court held an evidentiary hearing on certain issues. *See supra* at 207. The exhibits submitted during this hearing are designated "S——," for exhibits submitted by the State and "P——," for exhibits submitted by the Petitioner. Any reference to testimony in this hearing will be designated as "Hearing Transcript at ——."

encephalogram, CT brain scan, and neuropsychological studies. Exhibit S–1. The results of the electroencephalogram and the CT brain scan or whether these tests were ever performed is uncertain from the record.[17]

William G. Johnson, Ph.D. ("Johnson"), a clinical psychologist, also examined Lockett, performing both a psychological evaluation, at the request of the Court, and a neuropsychological evaluation, at Townsend's request. A report of the court-ordered psychological examination was made on March 24, 1986. Exhibit S–3. Johnson specifically concluded as follows:

> There is no evidence that Mr. Lockett suffered from a mental disorder. He is clearly competent to stand trial, and according to his description of the events surrounding the criminal charges, he could adequately distinguish between right and wrong.

Exhibit S–3, Section VI.

Johnson conducted the neuropsychological evaluation of Lockett on March 18, 1986. In the first paragraph of his evaluation report regarding this evaluation, Johnson states that: "This evaluation was requested [by Townsend] because Mr. Lockett told his at-torney and other individuals involved in his evaluation, that he has had a number of head injuries since 1980." Exhibit S–4. Johnson concluded in his report that "[i]t is unlikely that he would be unable to cooperate with his attorney due to memory/concentration problems, or an inability to understand what is being said to him." Exhibit S–4.

The finding that Lockett was competent to stand trial was not contradicted by experts testifying on Lockett's behalf during the evidentiary hearing. Four out of five of the expert witnesses that testified were essentially asked the same question by the Court or counsel: "Was Lockett competent to stand trial?" The answer each time was either a definitive "yes" or I cannot answer that.[18]

Based on these facts, this Court is hard-pressed to find that trial counsel's failure to request a competency hearing falls below the objective standard of reasonableness guaranteed by the Sixth Amendment. Furthermore, even *if* trial counsel's performance is assumed to be deficient on this point, Lockett has failed to prove any resulting prejudice as required by *Strickland*.[19] Lockett has failed to establish by a reasonable probability that had a competency hearing been requested by Townsend and subsequently held by the state trial court, that he would have been

---

17. *See* testimony of Dr. Timothy Summers, M.D., Hearing Transcript at 85–89.

18. **Question by the Court:** "Doctor, if you would assume a definition of competent to stand trial as meaning that the person was mentally able to understand the seriousness of the charges against him, and to be mentally able to consult with his attorney and understand his attorney's advice to him, would you have an opinion as to whether Carl Lockett, in April and May of 1986, was incompetent to a reasonable probability?" **Answer by Petitioner's expert witness, Dr. Sheldon Margulies:** "I'm not sure I can answer that question." Hearing Transcript at 119. **Question by the Court:** "Doctor, in your opinion was it reasonably probable that Mr. Lockett was incompetent on December—well, in April and May of 1986, the dates of the two trials, to understand the seriousness of what he was facing, the charges against him; and is it reasonably probable that he was incompetent to consult with his attorney and understand his advice to him?" **Answer by Petitioner's expert witness, Dr. David Price:** "Your Honor, based upon the result of the competency exam administered by Dr. Johnson, I would have to say that he knew the roles of the individuals in the courtroom and some of the legal process." Hearing Transcript at 210–11.

**Answers by Respondent's expert witnesses, in response to similar questions by counsel; Dr. Donald C. Guild:** "He was legally sane under the *M'Naghten* rule in Mississippi, clearly at the time of the crime." Hearing Transcript at 256; **Dr. William G. Johnson:** "[H]e was clearly competent to stand trial and he was responsible for his actions at the time." Hearing Transcript at 271; **Dr. Gerald C. O'Brien:** "Well, if I had to give a diagnostic statement here, I would say he certainly has a strong history of substance abuse. There is certainly evidence of a personality disorder of a mixed type. None of these things seem to me to be significant contributors to either his *M'Naghten* sanity at the time these crimes were committed nor his competence to stand trial or assist counsel." Hearing Transcript at 305.

19. *See Washington v. Johnson*, 90 F.3d 945, 953 (5th Cir.1996) (concluding that "[t]he federal district court's conclusion that Washington was in fact competent to stand trial dispels any claim of prejudice for failure to hire or request expert evaluation on that question"), *cert. denied*, — U.S. —, 117 S.Ct. 1259, 137 L.Ed.2d 338 (1997).

determined to be incompetent to stand trial.[20] In light of the information provided to Townsend in 1986, all of which stated that his client was competent to stand trial, Lockett's contention that Townsend was ineffective by not requesting a competency hearing is unavailing.[21]

### b. *Mitigation Evidence*

Lockett asserts that his trial counsel was ineffective for his failure to present mitigating evidence at the sentencing phase of each trial. The evidence which Lockett asserts was available to his counsel upon reasonable investigation is evidence of Petitioner's organic brain damage, Dissociative Identity Disorder, drug and alcohol abuse, "blackouts" and emotional disturbances. Petition at 24.

■■■ At the sentencing phase in Case 1, the State submitted a motion to incorporate the evidence presented in the guilt phase, which was granted by the trial court. The only other evidence offered by the State was a certified copy of Lockett's Texas auto-theft conviction, which was admitted into evidence over defense counsel's objection. The State did not present any witnesses. Case 1 (R. 614–43).[22]

On behalf of Lockett during the sentencing phase in Case 1, Townsend offered into evidence a stipulation that Lockett had epilepsy, to which the State agreed. Lockett's counsel also called four witnesses to testify on behalf of his client: Lockett's mother, his father, his stepmother and his stepfather. Both the

State and the defense made closing arguments during this phase. Case 1 (R. 614–43).

At the sentencing phase in Case 2, the State made an opening statement after defense counsel stated to the court that he would be making an opening statement. The State also moved to adopt the testimony which was introduced in the guilt phase, and the motion was granted. Finally, the State offered a certified copy of Lockett's Texas auto-theft conviction, which was entered into evidence over two defense objections. The State did not present any witnesses. Case 2 (R. 579–631).

In defense of Lockett during the sentencing phase of Case 2, Townsend made an opening statement, presented the testimony of Lockett's mother, and made a closing argument. Case 2 (R. 591–631). The record reflects that defense counsel spent approximately an hour and a half conferring with his client and his client's family between the arguments concerning the jury instructions and the presentation of witness testimony. Case 2 (R. 591). The state court, at the request of defense counsel, elicited testimony from Lockett himself regarding his understanding of his decision not to testify on his own behalf during the sentencing phase of the proceedings. Case 2 (R. 609–610).

■■■ This Court initially notes that the failure of defense counsel to offer mitigation evidence in the punishment phase of Case 2, except for the testimony of Lockett's mother, is not per se ineffective. *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir.1997) (citing *King v. Puckett*, 1 F.3d 280, 284 (5th Cir.1993)).[23]

**20.** In *Washington*, the Fifth Circuit affirmed the district court's finding of petitioner's competency to stand trial after an evidentiary hearing in which testimony regarding the petitioner's competency was fully developed, and the district court concluded that petitioner "was mildly retarded and suffered from organic brain damage and an abused childhood". 90 F.3d at 952.

**21.** The Court need not speculate as to the likelihood of the trial court's granting Townsend's request for a competency hearing in light of the court-ordered report prepared by Johnson, concluding that Lockett was competent to stand trial.

**22.** The page numbers listed for citations from the first trial record are difficult to read on the official copy of the record submitted by the State

to the Court. The numbers for these pages are very clear on the trial record excerpts submitted by the Petitioner, and the Court has taken the numbers from these excerpts. For ease of reference on appeal, and the Court assumes that this matter will be appealed by one or both parties, all of the references to the record in this portion of the opinion dealing with the ineffective assistance of counsel claim are contained in Volume V of the records for Case 1 and Case 2.

**23.** In *Rector*, the defendant's trial counsel had evidence that the defendant "allegedly suffered from child abuse, family instability, a poor educational background, low IQ, gunshot injuries, and that his mother was severely and chronically mentally ill." Defense counsel chose not to present this evidence during the sentencing phase

Further "[i]f such an omission is based on well informed, strategic decisions, it is 'well within the range of practical choices not to be second-guessed.'" *Id.* at 564 (citations omitted).

As stated previously, Lockett alleges that the failure of his trial counsel to present mitigating evidence during the sentencing phases of both trials, specifically to call Johnson as a witness, constitutes ineffective assistance of counsel.[24] Lockett relies upon Johnson's report of the 1986 psychological evaluation to support his claim that Townsend was ineffective. Exhibit S–3. Johnson testified during the evidentiary hearing held in this Court that if called as a witness in Lockett's trials, he would have presented the following testimony regarding Lockett's mental condition:[25] Lockett has an IQ of 82; he is of low intelligence in that he reads on a third or fourth grade level; and he was reared in a home environment where there were frequent fights between his parents and little opportunity for intellectual stimulation. Johnson also would have testified that Lockett was competent when he committed the crimes and competent to stand trial. Hearing Transcript at 272–75.

because he concluded that the jury might very well consider such evidence to be aggravating. The Fifth Circuit held that this strategic decision by defense counsel did not meet the deficiency prong of *Strickland.* 120 F.3d at 564.

24. As stated previously, Dr. William G. Johnson, Ph.D., is a professor and clinical psychologist with the University of Mississippi Medical Center, who conducted both a psychological and neuropsychological examination of Lockett in 1986. Johnson testified in the evidentiary hearing held by this Court in February, 1997. He submitted a report for each of the evaluations of Lockett which were conducted in 1986. The report of the psychological evaluation is Exhibit S–3, and the report of the neuropsychological examination is Exhibit S–4, both of which were submitted as evidence during the evidentiary hearing. Because Johnson was the only person who (1) examined Lockett in 1986, *and* (2) prepared contemporaneous reports setting forth the results of those examinations, the Court affords great weight to his testimony.

25. This testimony was based upon Johnson's review of the reports which he prepared in 1986 after interviewing and examining Lockett.

26. The report states as follows:

The Court finds that Townsend's testimony reflects that he made a reasonable decision to forego calling Johnson as a witness at trial based upon the information contained in the rest of the psychological report. Hearing Transcript at 335–38. During his psychological evaluation, Lockett told Johnson that he and Geraldine Calhoun were having a sexual affair and that she was the one who shot her husband.[26] Townsend made a strategic decision that any mitigation that could have been provided by Johnson's testimony concerning Lockett's low intelligence and home environment would clearly be outweighed by the harm that the sure introduction during cross-examination of Lockett's statements to Johnson during his evaluation would cause. Townsend testified that he thought these statements by Lockett would have a detrimental effect on his case, especially since Lockett's confessions were already part of the evidence. In his confessions, Lockett did not say anything about his alleged sexual affair with Geraldine Calhoun or the allegation that she shot her husband and begged Lockett to shoot her. Townsend testified that he believed that at the very least the information contained in Johnson's

[Lockett] stated that he went over to the Calhoun house after watching Mr. Calhoun leave. He indicated that he and Geral[dine] were having sex when Mr. Calhoun opened the door and that it should have been obvious to Mr. Calhoun that no rape was in progress. He stated that Geral[dine] pulled the pistol from his (Mr. Lockett's) pants and shot Mr. Calhoun several times. She then tried to shoot herself but Mr. Lockett reported that he grabbed the pistol from her. He reported that she was confused, and started shaking. She wanted to leave together and they drove off. As they were going down the road, she stated "I can't leave." They pulled into his grandmothers area and talked for a while. They then smoked mar[i]juana and had sex. She then asked him to kill her. She became more serious and he realized that she was not joking. According to his report, she repeatedly pleaded with him to kill her and they walked back into a shed area. She got on her knees and he shot her once in the head. He observed movement and thought she might be suffering and he shot her again. Throughout these episodes, Mr. Lockett was not suffering from a mental disorder and could readily distinguish the difference from right and wrong.
Exhibit S–3 at 3.

reports would make Lockett look untruthful and, therefore, any mitigating value would be diminished. Hearing Transcript at 327–70. The Court finds that this strategic decision was not unreasonable.

In addition, the State submits a letter written by the prosecution to Townsend in 1986 listing additional witnesses for the State.[27] Exhibit S–8. Orbie Craft ("Craft"), the state prosecutor at both of Lockett's trials, testified that these witnesses would have been called to rebut any evidence offered by the defense regarding Lockett's mental condition, specifically the results of Johnson's evaluations. Hearing Transcript at 319–21. Townsend's testimony reflects that this letter and another supplemental witness list submitted by the State affected his decision not to present the alleged mitigating evidence.[28] Townsend testified that he weighed the possible mitigating effect the mental condition evidence might have against the possible detrimental effect of the additional evidence which the prosecution intended to submit in rebuttal. Townsend then decided to forego presenting any of the alleged psychological mitigating evidence.

In retrospect, the Court finds that Townsend's decision to forego presenting the proposed testimony regarding Lockett's mental capacity, either by experts or family members, was not unreasonable. Townsend made a strategic decision that such testimony would have been more harmful than helpful to Lockett's defense. Such decisions should not be second-guessed by this Court over ten years after the fact. The Fifth Circuit has recognized the "heavy deference owed to trial counsel when deciding strategically to forego admitting evidence of a 'double edged nature' which might ultimately harm a defendant's case." *Boyle v. Johnson,* 93 F.3d 180, 188 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 968, 136 L.Ed.2d 853 (1997). The Fifth Circuit further stated:

[A]ll the evidence that Boyle maintains should have been presented at the punishment phase of his capital murder trial had a double-edged quality. Accordingly, we find that Boyle has failed to overcome the strong presumption that these informed tactical decisions were reasonable under the circumstances. Boyle has thus failed to satisfy the deficiency prong of *Strickland.*

*Boyle,* 93 F.3d at 188; *see also Rector,* 120 F.3d at 564 (concluding that "information that Rector allegedly suffered from child abuse, family instability, a poor educational background, low IQ, gunshot injuries, and that his mother was severely and chronically mentally ill" could well be considered aggravating, rather than mitigating, by the jury, and therefore, the failure of Rector's counsel to present such evidence in mitigation does not constitute performance).

Assuming *arguendo* that Lockett has met the deficiency prong of *Strickland,* the Court finds that the failure to present testimony regarding Lockett's mental condition at the sentencing phase of each of his trials did not prejudice Lockett by undermining the death sentences imposed by the jury. Lockett has "failed to show the existence of evidence of sufficient quality and force which, if introduced, would have more likely than not persuaded the jury that the death penalty was unwarranted." *Mann v. Scott,* 41 F.3d 968, 984 (5th Cir.1994) (citations omitted), *cert. denied,* 514 U.S. 1117, 115 S.Ct. 1977, 131 L.Ed.2d 865 (1995). The Court is not persuaded that the substance of the witness testimony which Lockett asserts should have been presented regarding his mental condition undermined the reliability and confidence of the state court proceedings.[29] Thus, Lockett has failed to satisfy the prejudice prong of *Strickland.*

 The Court concludes that all of the instances of attorney ineffectiveness alleged

---

**27.** The additional witnesses were a psychologist, a psychiatrist, and Lockett's probation officer. Hearing Transcript at 320.

**28.** There are two supplemental witness lists submitted by the State. The second list names Dr. Dunn, a physician who treated inmates in the Rankin County Jail during the late 1980's, as a

witness. Exhibit S–14. Craft referred only to S–8 in his testimony, and Townsend referred to both S–8 and S–14.

**29.** *See, e.g., Boyle,* 93 F.3d at 188–89; *Mann,* 41 F.3d at 984.

by Lockett either do not meet the deficiency prong or the prejudice prong of *Strickland.* Though the performance by trial counsel could have been improved in certain instances, especially in retrospect, the Court is convinced that Lockett's trial counsel sufficiently defended him during the guilt and sentencing phases of both capital murder trials. The proceedings were fair and reliable, and the Court is confident that the result of the trials and sentences received would not have changed had the alleged instances of deficiency not occurred. The Court therefore concludes that Lockett is not entitled to habeas relief based upon his claim of ineffective assistance of his trial counsel.

### 5. *Direct Appeal*

 Lockett also contends that his appellate counsel, Clive Stafford Smith ("Stafford Smith") was constitutionally ineffective for failing to raise certain issues on direct appeal which are raised in this Petition.[30] The *Strickland* standard applies to appellate counsel as well as trial counsel. *See McCrae v. Blackburn,* 793 F.2d 684 (5th Cir.), *cert. denied,* 479 U.S. 965, 107 S.Ct. 466, 93 L.Ed.2d 411 (1986); *Wicker v. McCotter,* 783 F.2d 487 (5th Cir.), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 723 (1986); *Hamilton v. McCotter,* 772 F.2d 171 (5th Cir.1985). Counsel is not ineffective merely because of a failure to raise issues requested by the defendant or for failure to raise every possible point or theory on appeal. *Sharp v. Puckett,* 930 F.2d 450, 452 (5th Cir.1991) (citations omitted).

 Certainly, Stafford Smith could have raised on direct appeal all the additional issues thereafter raised by Lockett's post-conviction counsel. However, the failure to raise every possible theory on appeal does not constitute ineffective assistance. In order for Lockett to have suffered any prejudice, the errors that appellate counsel failed to raise must have been meritorious and must have warranted habeas relief. Because this Court concludes that the additional al-

leged errors would not have given rise to a constitutional violation, Lockett's appellate counsel is not deficient for failing to raise these issues.

**Ground Three:** *The state's abuse of its peremptory challenges to exclude all black jurors from both of Petitioner's juries deprived Petitioner of his right to equal protection under the Fourteenth Amendment to the United States Constitution.*

#### 1. *Case 1*

The trial involving the murder of John Calhoun began on April 1, 1986, approximately one month before the Supreme Court held in *Batson v. Kentucky,* 476 U.S. 79, 96–97, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986), that a party seeking to exercise peremptory challenges to strike black members of a jury venire must "come forward with a neutral explanation for challenging" these potential jurors. Lockett concedes that because the trial in Case 1 occurred prior to the *Batson* decision, "it is difficult to imagine how such an objection could have been made at trial." Memorandum in Support of Motion for Evidentiary Hearing at 39. Lockett asserts, however, that the post-trial discovery of evidence which would have supported a claim of purposeful discrimination by the prosecutor in violation of the holding in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), constitutes "cause" for the failure of trial counsel to raise a contemporaneous objection at trial.

The evidence offered by Lockett to show that the prosecutors in Lockett's trials engaged in purposeful discrimination includes the following:

1. The same prosecutors who tried Lockett's cases in April and May, 1986, also prosecuted the cases of *State v. Nixon,* No. 1064 (Forest County Cir. Ct. May, 1986), and *State v. Faraga,* No. 1802 (Rankin County Cir. Ct. Feb., 1986), both of which were capital murder trials.

---

**30.** Specifically, these issues are listed as grounds 2, 8, 10, 12, 13, 20, 23, and 25 in Lockett's

Petition.

2. The prosecutors' voir dire notes in *Nixon, Faraga* and Lockett's Case 2, contain evidence of racial discrimination against the black venire members.

 a. To the right side of the names of each of the five black members of the venire in Case 2 against whom the State exercise peremptory strikes—Sandifer, Preston, Merritt, Oatis and McGinty—appears the letter "B".

 b. With respect to the *Nixon* venire, Assistant District Attorney Richardson wrote a handwritten note to District Attorney Craft saying: "It seems to be a lot of Blacks."

 c. At the top of the first venire list in *Nixon* is handwritten: "SEEMS TO BE A LOT OF BLACKS" (capitals in original).

 d. The "B" designation appears to the right of the names of several members of the venire in *Nixon* as well.

Memorandum in Support of Motion for Evidentiary Hearing at 38. According to Lockett, the prosecutors' voir dire notes would have formed the basis for a meritorious *Swain* objection had such notes been available to him. The discovery of such notes post-trial constitutes "cause" for a *Swain* objection not being made, and any such objection, had it been made, "would now be before the Court as a *Batson* objection." Memorandum in Support of Motion for Evidentiary Hearing at 40; *see also Ford v. Georgia*, 498 U.S. 411, 420, 111 S.Ct. 850, 855, 112 L.Ed.2d 935 (1991) (a *Swain* objection at a pre–*Batson* trial must be treated as a *Batson* objection).

The State asserts that this claim was procedurally barred from consideration by the state court and is therefore barred from consideration by this Court. The State does not address the merits of the issue concerning whether the evidence presented by Lockett is sufficient to support a valid Equal Protection claim of racial discrimination as articulated in *Swain*.

Although this issue was found to be procedurally barred by the state court,[31] this Court will address the issue out of an abundance of caution. The Court must therefore determine whether the evidence presented by Lockett would have been sufficient to show that the prosecutors in Case 1 violated the dictates of *Swain*. The Court concludes that the evidence presented by Lockett does not rise to the *Swain* standard which was applicable at the time of his trial.

The *Swain* test for establishing an equal protection claim is quite stringent:

We have decided that it is permissible to insulate from inquiry the removal of Negroes from a particular jury on the assumption that the prosecutor is acting on acceptable considerations related to the case he is trying, the particular defendant involved and the particular crime charged. But when the prosecutor in a county, in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim may be, is responsible for the removal of Negroes who have been selected as qualified jurors by the jury commissioners and who have survived challenges for cause, with the result that no Negroes ever serve on petit juries, the Fourteenth Amendment claim takes on added significance.... In these circumstances, giving even the widest leeway to the operation of irrational but trial-related suspicions and antagonisms, it would appear that the purposes of the peremptory challenge are being perverted. If the State has not seen fit to leave a single Negro on any jury in a criminal case, the presumption protecting the prosecutor may well be overcome. Such proof might support a reasonable inference that Negroes are excluded from juries for reasons wholly unrelated to the outcome of the particular case on trial and that the peremptory system is being used to deny the Negro the same right and opportunity to participate in the administration of justice enjoyed by the white population. These ends the peremptory challenge is not designed to facilitate or justify.

---

**31.** *See Lockett*, 517 So.2d at 1331 (direct appeal); *Lockett*, 614 So.2d at 894 (first post-conviction appeal).

*Swain,* 380 U.S. at 223–24, 85 S.Ct. at 837–838 (citation omitted).

■ The evidence presented by Lockett does not satisfy this test. Evidence that the prosecutors identified certain jurors by their race does not prove that the prosecutors "intended" to strike all of those jurors from the panel because of their race. Furthermore, even if the Court agrees with Lockett's assessment that the prosecutors' comments concerning the number of blacks on the panel—"seems to be a lot of blacks"—was an "obvious worry" for the prosecution, Lockett has failed to allege, much less prove, that during this time period, no black persons served on any juries in cases involving these prosecutors.[32] Lockett's pre–*Batson–Swain* claim is therefore without merit.

### 2. *Case 2*

The trial involving the murder of Geraldine Calhoun occurred in May, 1986, shortly after the *Batson* decision was rendered. In Case 2, the trial judge overruled objections by Lockett's counsel to the use of peremptory challenges by the prosecution to strike several blacks from the jury venire. The result of such challenges is that Lockett was tried and convicted by an all-white jury. Lockett challenges the race-neutral reasons given by the prosecution. Lockett also asserts that the trial judge imposed additional criteria, not required by *Batson,* in determining that the peremptory challenges by the prosecution were used in a racially discriminatory manner.

The State asserts that the finding of no discrimination by the trial judge is a finding of fact which this Court must presume to be correct. Because the trial judge concluded that the prosecution did not exercise its peremptory challenges on the basis of race, the State asserts that Lockett is not entitled to an evidentiary hearing on this claim.

■ The United States Supreme Court has recently commented on *Batson* and its progeny in the context of a habeas proceeding:

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination.... The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."

*Purkett v. Elem,* 514 U.S. 765, 767–68, 115 S.Ct. 1769, 1770–1771, 131 L.Ed.2d 834 (1995) (quoting *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (plurality opinion); *id.* at 374, 111 S.Ct. at 1874 (O'Connor, J., concurring in judgment)). The finding required by step 3 is a factual finding which must be "presumed to be correct, and may be set aside, absent procedural error, only if [it is] 'not fairly supported by the record.'" *Purkett,* 514 U.S. at 769, 115 S.Ct. at 1771 (quoting 28 U.S.C. § 2254(d)(8)).

■ The Court finds that Lockett has failed to show that the decision by the trial judge was not fairly supported by the record. The Court further finds that the factual findings made by the trial judge, and accepted by

---

**32.** The Court notes that both Lockett and Nixon were tried by all-white juries. *See Nixon v. State,* 533 So.2d 1078, 1086 (Miss.1987), *cert. denied,* 490 U.S. 1102, 109 S.Ct. 2458, 104 L.Ed.2d 1012 (1989). Lockett has presented no evidence concerning whether Lazaro Faraga, the other case mentioned by Lockett, was similarly tried by an all-white jury. The two Mississippi Supreme Court cases addressing Faraga's direct appeal and petition for post-conviction relief do not mention this issue. *See Faraga v. State,* 557 So.2d 771 (Miss.1990); *Faraga v. State,* 514 So.2d 295 (Miss.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 894 (1988). Thus, the fact that two trials conducted by these particular prosecutors had all-white juries is not sufficient evidence to prove a consistent pattern of discrimination sufficient to satisfy the requirements of *Swain.*

the Mississippi Supreme Court, with regard to each of the prosecution's proffered reasons for striking the black jurors in Case 2 are presumed to be correct. In fact, Lockett does not seriously challenge those stated reasons. Rather, Lockett's challenge seems to be aimed at the language used by the trial judge in explaining his ruling on this issue, rather than the proffered reasons themselves. The Mississippi Supreme Court addressed this entire issue at length and included the entire commentary of the trial judge [33] in its decision. *Lockett,* 517 So.2d at 1348–53. The Court agrees with the decision of the Mississippi Supreme Court that the trial judge conducted a proper *Batson* inquiry, and that his factual findings that jurors were not excluded on the basis of their race must be upheld. *Id.* at 1353.

**Ground Four:** *The introduction throughout both phases of petitioner's trials of evidence and argument concerning the other murder deprived petitioner of his rights under the Fourteenth Amendment to the United States Constitution.*

In each of Lockett's trials, the state court allowed evidence concerning the murder of the spouse to be admitted into evidence. Thus, in Case 1 involving the murder of John Calhoun, evidence of the murder of Geraldine Calhoun, for which Lockett had not yet been convicted, was admitted into evidence "as an implied admission of guilt and . . . to establish malice aforethought and to negate the proposition that the first killing took place in self defense as a result of accident or misfortune or under circumstances amounting to manslaughter." *Lockett,* 517 So.2d at 1330.

In Case 2 involving the murder of Geraldine Calhoun, evidence of the murder of John Calhoun, for which Lockett had been convicted, was admitted into evidence, although the fact of his conviction for such murder was excluded. R2 at 408. The trial judge concluded:

The ruling of the Court is that the evidence of the first murder, in my judgment, is clearly admissible as a showing of motive and intent if it is true. I am not judging whether it is true, but if it is proved, it could tend to show motive and intent and it could also be necessary for the jury to have some comprehensible understanding of the rest of the testimony in the case. . . . I think for those three reasons: it tends to show potential motive; it tends to show intent; and it tends to be necessary to give the jury an accurate view of the entirety of the evidence or a reasonable view of any of the evidence; it should be admissible.

R2 at 413–14.

Lockett asserts that the trial judges in both trials erred in admitting such evidence under the motive exception to Rule 404(b) of the Mississippi Rules of Evidence. Lockett also asserts that neither judge weighed the probative value of the evidence against its possible prejudicial effect as required by Rule 403 of the Mississippi Rules of Evidence. Such errors, according to Lockett, rendered both trials fundamentally unfair and denied him due process of law.

The State asserts that the trial courts and the Mississippi Supreme Court properly applied state law to admit the challenged evi-

---

**33.** The Court notes that Lockett offers a quote by the trial judge, which this Court deems to be taken out of context, to support his contention that the trial judge imposed special, judge-made criteria not contemplated in *Batson:* "[I]f I had a venire where there was a reasonably well-educated, reasonably responsible black who appeared to meet most criterion for jury service, and there was no reasonable reason given to exclude that person, I would disallow a challenge on that juror." Case 2 (R. 690). The Court notes that this quote seems to hurt, rather than aid Lockett, on the *Batson* issue, especially in light of the *Purkett* holding that a " 'legitimate reason' is not a reason that makes sense, but a reason that does not deny equal protection." *Purkett,* 514 U.S. at 769, 115 S.Ct. at 1771. Although the Court need not so find, the reasons given by the prosecution for striking five of the black jurors in Case 2, *see Lockett,* 517 So.2d at 1350, are certainly nondiscriminatory, and they even "make sense," even though *Batson,* as interpreted by *Purkett,* contains no such requirement. As stated by the trial judge:

I heard in this case the reasons that the State announced for challenging those jurors; and I came away from that convinced that those were reasons that an intelligent prosecutor would have challenged each one of those jurors whether he had been black, white, or Chinese.

*Lockett,* 517 So.2d at 1351.

dence. Furthermore, the State argues that even if the admission of such evidence violates state law, Lockett is not entitled to habeas relief because no federal constitutional violation occurred.

■ The Supreme Court has continuously held that " 'federal habeas corpus relief does not lie for errors of state law.' " *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990)); *see also Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874–875, 79 L.Ed.2d 29 (1984) (concluding that "[a] federal court may not issue the writ on the basis of a perceived error of state law"). Federal courts hold no supervisory power over state judicial proceedings, and federal habeas corpus relief is appropriate only when a conviction has been obtained in violation of federal law or a specific right protected by the United States Constitution.[34] *Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). When considering a habeas corpus petition, a federal court reviewing state evidentiary rulings does not sit as a super state supreme court to review error under state law. *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir.1988).

■ Because admissibility of evidence is a matter of state law, only a contention that the admission of the evidence rendered the trial fundamentally unfair or that it violated a specific constitutional right will be considered in a federal collateral proceeding. *Edwards v. Butler*, 882 F.2d 160, 164 (5th Cir.1989); *Johnson v. Blackburn*, 778 F.2d 1044, 1050 (5th Cir.1985) (citing *Meyer v. Estelle*, 621 F.2d 769, 771 (5th Cir.1980)). In determining whether the alleged erroneous admission of prejudicial evidence is so fundamentally unfair as to justify habeas relief, this Court must determine whether the evidence is material in the sense of a crucial, critical, highly significant factor in the context of the entire trial. *Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir.), *cert. denied*, 484 U.S. 842, 108 S.Ct. 132, 98 L.Ed.2d 89 (1987);

*Anderson v. Maggio*, 555 F.2d 447, 451 (5th Cir.1977).

■ The Court finds that the decision of · each trial judge to admit the challenged evidence in each case did not violate Rule 404(b) of the Mississippi Rules of Evidence, as the murder of each of the Calhouns was evidence of motive to kill the other. Specifically, with regard to the murder of John Calhoun, the state court concluded as follows:

> We agree with the State's contention that the evidence of Mrs. Calhoun's murder by Lockett was so interrelated and interconnected in time of Mr. Calhoun's killing as to constitute a single or interconnected transaction, a basis for admissibility specifically noted in the Comments to Rule 404(b).... Furthermore, the killing of Mrs. Calhoun was clearly motivated by Lockett's desire to effect a successful escape from his murder of Mr. Calhoun. Thus, the mention of her fate was relevant to establish an unlawful motive in the killing of her husband.

*Lockett*, 517 So.2d at 1331.

With regard to the murder of Geraldine Calhoun, the state court found that the evidence of motive was even stronger than in the first case:

> Mrs. Calhoun was present when John Calhoun was shot, and she was forced to assist Lockett in robbing her husband's body. Lockett's own statements suggest he told Mrs. Calhoun she would have to die because she witnessed the crime and she knew who he was. Mrs. Calhoun was taken from her home and killed within a very short period following her husband's death.

*Lockett*, 517 So.2d at 1354–55. In Case 2, as it had concluded in Case 1, the Mississippi Supreme Court concluded that the murder of John Calhoun was "interrelated and inseparable" from the murder of Geraldine Calhoun, and the evidence of John Calhoun's murder was relevant to Lockett's motive for

---

34. The habeas statute states that the writ may be granted to·a person "in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added).

murdering Geraldine Calhoun. *Id.* at 1355.[35]

The Court agrees with the state court that the challenged evidence was admissible in each case to show motive and as part of an interconnected transaction. *See Ballenger v. State,* 667 So.2d 1242, 1257 (Miss.1995) (concluding that "[e]vidence of other crimes ... is also admissible in order to tell the complete story so as not to confuse the jury"), *cert. denied,* —— U.S. ——, 116 S.Ct. 2565, 135 L.Ed.2d 1082 (1996). Given the facts of these cases, it would have been difficult, if not impossible, to explain the facts of either murder without mentioning the other murder. The Court therefore concludes that the state court trial judges did not err in admitting the challenged evidence of each of the murders in the respective cases.

Alternatively, even if it was error for the respective trial judges to have admitted the challenged evidence of the other murder, the Court concludes that admission of the evidence was not fundamentally unfair and did not violate any specific constitutional right. As noted previously, the evidence presented against Lockett overwhelmingly proved his guilt beyond a reasonable doubt. Both murder weapons, which had been stolen in earlier community burglaries, were found in Lockett's room. John Calhoun's credit cards were also found in the house where Lockett lived. Furthermore, Lockett confessed to both crimes, describing each in great detail. Faced with such evidence, the Court finds that if it was error to admit the evidence of the other murder in the respective cases, such error was harmless. *See infra* at 241 for a detailed discussion of harmless error review of "constitutional error of the trial type."

**Ground Five:** *The stacking of aggravating circumstances in Case I deprived petitioner of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.*

Lockett asserts that the trial court in Case 1 permitted the jury to "stack" aggravating circumstances by instructing them to consider (1) whether the murder was committed in the course of a robbery, and (2) whether the murder was committed for pecuniary gain, as separate aggravating factors. The jury unanimously found that each of these aggravating factors was present in Case 1. In 1991, the Mississippi Supreme Court concluded that a jury should not be allowed to consider both of these aggravating circumstances because "[w]hen a life is at stake, a jury cannot be allowed the opportunity to doubly weigh the commission of the underlying felony and the motive behind [the] underlying felony as separate aggravators." *Willie v. State,* 585 So.2d 660, 681 (Miss.1991). Despite the pronouncement by the *Willie* court that the decision would "be prospective and will take effect from this date forward," *id.,* Lockett asserts that "United States Supreme Court authority that was applicable at the time of Mr. Lockett's trial actually dictates the results of *Willie*—and therefore the use of the invalid combination of aggravators at Mr. Lockett's trial was unconstitutional." [36] Memorandum in Support of Motion for Partial Summary Judgment at 15 (citing *Sochor v. Florida,* 504 U.S. 527, 532, 112 S.Ct. 2114, 2118–2119, 119 L.Ed.2d 326 (1992) and *Stringer v. Black,* 503 U.S. 222, 235, 112 S.Ct. 1130, 1139, 117 L.Ed.2d 367 (1992)) [37]

The State asserts that this claim is precluded by the Fifth Circuit decision in *Wiley v. Puckett,* 969 F.2d 86, 95–98 (5th Cir.1992). In that case, the Fifth Circuit addressed this

35. The Mississippi Supreme Court also concluded as to each case that the probative value of the evidence outweighed its prejudicial effect. *Lockett,* 517 So.2d at 1331; *Lockett,* 517 So.2d at 1355.

36. Lockett does not argue that the stacking of these aggravating factors constitutes a state-law error, presumably because such stacking did not become an error under Mississippi state law until 1991.

37. The Court notes that the Supreme Court cases cited by Lockett were decided in 1992, a full 6 years after his trials. Lockett, however, asserts that both of these cases rely upon prior Supreme Court precedent which should dictate the result he seeks on this particular issue. Curiously, Lockett does not offer the Court any guidance concerning which particular pre-1986 Supreme Court cases, or for that matter, any Supreme Court cases decided since that time, which would require the granting of habeas relief on this particular ground.

same issue at length and found that *Stringer* did not speak to this issue, concluding that "[w]e can find no precedent that will assist Wiley." *Id.* at 97. The *Wiley* court reasoned that applying the rule against the stacking of these two aggravating factors would constitute a new rule under *Teague:* [38]

> Wiley is not claiming that the robbery and pecuniary gain aggravating circumstances were invalid, improperly defined, or imprecise. *Rather, he simply raises a broad-based claim that "stacking" of identical, valid aggravating circumstances will impermissibly influence the jury in a weighing state toward returning a death sentence.* Were we to grant Wiley the relief he seeks we would necessarily "break new ground," so the rule must be classified as new.

*Id.* at 97 (emphasis added).

▬ The Court concludes that Lockett has failed to present any United States Supreme Court precedent which would entitle him to habeas relief based upon this ground. This Court is bound by the holding of *Wiley*, and therefore concludes that Lockett is not entitled to habeas relief based upon this ground.

**Ground Six:** *The "especially heinous, atrocious, or cruel" aggravating circumstance was not supported by the evidence in Case 1, depriving petitioner of due process of law in violation of the Fourteenth Amendment to the United States Constitution.*

Lockett asserts there is insufficient evidence in the record of Case 1 to support the finding of the "especially heinous, atrocious, or cruel" aggravating circumstance.[39] According to Lockett, the evidence shows that John Calhoun was "shot dead as soon as he opened the door to the house." Memoran-

dum in Support of Motion for Partial Summary Judgment at 16 (citing to Case 1 (R. 575)). Lockett relies on *Taylor v. State*, 672 So.2d 1246 (Miss.), *cert. denied,* —— U.S. ——, 117 S.Ct. 486, 136 L.Ed.2d 379 (1996), to support his claim.

*Taylor* involved the murder of Mildred Spires, who was last seen on July 11, 1987, and whose partially decomposed body was not discovered until September 1, 1987. *Id.* at 1253, 1255. After performing an autopsy, Dr. Rodrigo Galvez concluded that the cause of death was probably strangulation. *Id.* at 1255. Dr. Galvez testified that strangulation is a slow way to kill somebody, and that strangulation causes the victim to feel physical pain in the neck. *Id.* at 1275. On direct appeal, the Mississippi Supreme Court concluded that the "especially heinous, atrocious, or cruel" aggravating circumstance was improperly submitted to the jury. *Id.* at 1276. The court reasoned that there was no evidence before the jury as to how the crime was actually committed. *Id.*

> Even if Dr. Galvez's opinion as to strangulation is accepted as true, there is no evidence of how the strangulation was carried out and no evidence of any "additional acts" to set the crime apart from the norm of capital felonies as conscienceless, pitiless or unnecessarily torturous.

*Id.* Lockett asserts that if murder by strangulation is not "especially heinous, atrocious, or cruel," then certainly the "quick death" of John Calhoun should not have warranted the finding of this aggravating factor by the jury in Case 1.

The State asserts that the Mississippi Supreme Court made a factual finding that the evidence was sufficient to support the challenged aggravating circumstance. According to the State, Lockett is not entitled to relief unless "the facts underlying the claim would

---

38. In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that "new rules of constitutional criminal procedure will not be announced on federal habeas review unless one of two narrow exceptions applies." *Wiley*, 969 F.2d at 96 (citing *Teague*, 489 U.S. at 311–13, 109 S.Ct. at 1075–1077). Neither of the two exceptions was applicable in *Wiley*, nor are they relevant in this case to this particular issue.

39. Lockett's argument is unclear concerning whether the jury should not have been instructed to consider this particular aggravating factor or whether there was insufficient evidence for the jury to conclude that the murder of John Calhoun was "especially heinous, atrocious, or cruel." In either case, the Court concludes Lockett is entitled to habeas relief based upon this ground.

be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." Memorandum of Authorities in Support of Answer at 44.[40] The State asserts, and Lockett agrees that this issue should be analyzed as a sufficiency of the evidence claim, which is a question of law.

When this issue was submitted to the Mississippi Supreme Court on direct appeal, that Court concluded:

> Acknowledging this Court's rejection of this claim in practically all of the cases where it was considered, Lockett nevertheless contends that the facts in this case were not sufficient to support such an aggravating circumstance. Specifically, Lockett argues that the evidence is uncontroverted that the victim here was shot dead as soon as he opened the door to his house. Accordingly, Lockett argues that there is no evidence supporting this aggravating circumstance.
>
> The State rebuts by arguing that the evidence shows that the victim was shot once, after which Lockett fired an additional "four to five rounds." The State argues that there is no evidence to indicate that Mr. Calhoun was dead or even unconscious when the latter shots were fired. The

State cites as support several cases in which this Court has refused a similar claim.

> These facts seem closely analogous to those which did not require reversal in *Jones v. State*, 517 So.2d 1295 (Miss.1987). *See also Wiley v. State*, 484 So.2d 339, 356–63 (Miss.1986). On the authority of *Jones* and *Wiley*, the assignment of error is denied.

*Lockett*, 517 So.2d 1317, 1337 (Miss.1987).[41]

■■■ The Court agrees with both parties that this issue should be characterized as a sufficiency of the evidence claim, a pure question of law. The Supreme Court in *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), addressed this issue concluding that the "rational factfinder" standard established in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is the appropriate standard of review "in determining whether a state court's application of its constitutionally adequate aggravating factor was so erroneous as to raise an independent due process or Eighth Amendment violation...." *Jeffers*, 497 U.S. at 781, 110 S.Ct. at 3102. The *Jackson* standard is "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

**40.** Although the State offers no specific citation and refers only to the "newly enacted habeas provisions," the quoted language is contained in 28 U.S.C. § 2254(e)(2)(B), which Lockett correctly asserts applies only to whether an evidentiary hearing should be held on a claim for which the applicant has failed to develop the factual basis in a state court proceeding. This newly enacted standard is not applicable in this case, however, pursuant to the *Lindh* decision. *See supra* at 210.

**41.** In *Jones*, police officers found Josie Jones lying dead on her living room floor after having been shot with three .22–caliber bullets. 517 So.2d at 1297. There was a rifle on the floor near her body. *Id.* These were the only facts presented to the jury when the defendant was retried, his first conviction having been vacated due to the admission of certain portions of his confession after he invoked his right to remain silent. *See Jones v. State*, 461 So.2d 686, 697–99 (Miss.1984). The Mississippi Supreme Court concluded that the death penalty was properly imposed "considering both the crime and the manner in which it was committed and the de-

fendant; that the death penalty imposed on Jones is consistent and even-handed to like and similar cases; and that the sentencing phase followed in his trial provided a meaningful basis for distinguishing the few cases in which the death penalty is imposed and the many cases in which it is not imposed." *Jones*, 517 So.2d at 1303. Justice Robertson, dissenting in part, noted that "[n]otwithstanding the force of correct linguistic analysis, we have repeatedly refused to disturb jury findings that gunshot murders, unattended by significant prior fear on the part of the victim and where death followed the shooting within a matter of minutes, were 'especially heinous, atrocious or cruel.'" *Id.* at 1308 (Robertson, J., dissenting in part) (citing cases).

In *Wiley*, the victim was shot "in an ambush-type manner without any warning" by three shots fired one after the other. *Wiley*, 484 So.2d at 353. There was conflicting evidence concerning whether the victim died instantly or shortly after the shooting. *Id.*, and n. 3 and 4. The Mississippi Supreme Court concluded that the evidence was sufficient to support a finding by the jury of the "especially heinous, atrocious or cruel" aggravating factor. *Id.* at 354.

essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789 (citation omitted)).[42]

 Although this issue is characterized as an issue of law, this Court must afford a presumption of correctness to any factual findings made by the state court in its determination of whether the facts in Case 1 were sufficient to support the challenged aggravating circumstance. *Smith v. Collins,* 964 F.2d 483, 485 (5th Cir.1992). In doing so, however, this Court is not "'necessarily bound by'" such factual findings. *Gilley v. Collins,* 968 F.2d 465, 469 (5th Cir.1992) (quoting *Sumner v. Mata,* 455 U.S. 591, 597–98, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982)).

> Section 2254(d) permits a federal court to conclude ... that a state finding was not fairly supported by the record. But the statute does require the federal courts to face up to any disagreement as to the facts and to defer to the state court unless one of the factors listed in § 2254(d) is found.... Applying the § 2254 presumption of correctness to the state court's findings of fact does not conflict with the review mandated by *Jackson.* [A]s a general matter, *Jackson* follows the basic legal standard that in order to preserve the state factfinder's role a federal court must review the evidence in light most favorable to the prosecution. Section 2254(d), on the other hand, provides guidance as to the extent a federal court should probe a state court's factfinding when ruling on habeas petitions.

*Gilley,* 968 F.2d at 469 (citations and internal quotations omitted).

 With these considerations in mind, the Court concludes that the Mississippi Supreme Court failed to make any factual findings concerning the death of John Calhoun. Although the state court analogized the facts of John Calhoun's death to other Mississippi cases, the court failed to set forth any facts on which to base such an opinion. Given the lack of any factual basis to support this conclusion, the Court must conclude that no reasonable factfinder could conclude that the crime was conscienceless or pitiless and unnecessarily torturous to John Calhoun. As stated by the dissent on direct appeal, "[i]f this capital murder is especially heinous, atrocious or cruel, they all are." *Lockett,* 517 So.2d at 1345 (Robertson, J., concurring in part and dissenting in part). The Court agrees with Lockett's argument based upon the holding in *Taylor:* If murder by strangulation does not warrant submission of the especially heinous, atrocious and cruel instruction to the jury, *see supra* at 226 (discussing *Taylor,* 672 So.2d 1246), then certainly killing a man as soon as he walks through his front door, whether with one shot or four or five, similarly does not warrant such an instruction. The Court finds that Mississippi has failed to properly narrow the class of cases in which this instruction is given. *See supra* at 226–27 (discussion of *Taylor*) and 227, n. 41 (discussion of *Jones* and *Wiley*). The Court therefore concludes that the heinous, atrocious and cruel instruction in Case 1, even though it was properly narrowed, should not have been given to the jury in that case.

Alternatively, the Court finds that there was insufficient evidence presented at trial for any rational finder of fact to conclude that the murder of John Calhoun was especially heinous, atrocious or cruel. The only facts concerning the murder were contained in Lockett's confession in which he stated that he shot and killed John Calhoun as soon as he opened the door to the house. Case 1 (R. 575). In his closing argument, the prosecutor even argued this point stating: "Four shots ring out. Three of them strike him and he falls dead in his own house." Case 1

---

**42.** In adopting this rational factfinder standard, the *Jackson* Court reasoned that:

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.

*Jeffers,* 497 U.S. at 781–82, 110 S.Ct. at 3103 (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789).

(R. 631). As in *Taylor*, there was no testimony concerning the length of time that John Calhoun remained alive. There was also no testimony that any amount of time elapsed between the time that John Calhoun walked through the door and the time that he was shot by Lockett. Absent such evidence, no rational finder of fact could conclude that the murder of John Calhoun was unnecessarily torturous.

For these reasons, the Court finds that Lockett is entitled to habeas relief on this ground. Lockett's death sentence for the murder of John Calhoun should be vacated, and he should receive a new sentencing hearing for this murder.

**Ground Seven:** *The instructions given at the sentencing phase of both of petitioner's trials could have been interpreted by a reasonable jury as imposing a requirement that the jury unanimously agree on mitigating circumstances in violation of the Eighth and Fourteenth Amendments to the United States Constitution.*

Lockett asserts that the jury instructions given at the sentencing phases of both trials required the jury to unanimously agree on mitigating circumstances. Such a requirement, according to Lockett, violates the Eighth and Fourteenth Amendments to the United States Constitution. The State asserts that this ground for relief has never been presented to the state courts, and Lockett has thus failed to exhaust his state court remedies. The State further asserts that if presented with this issue now, the state courts would find the claim to be procedurally barred. Thus, according to the State, this Court should conclude that the claim is procedurally barred.

The State is simply mistaken that this claim was not addressed by the Mississippi Supreme Court. In both opinions concerning Lockett's first petitions for post-conviction relief, the Mississippi Supreme Court concluded as follows:

> *McKoy*[43] held that North Carolina's capital sentencing scheme, which prevented the jury from considering any mitigating factor that the jury had not unanimously found to exist, violated the United States Constitution. Lockett's reliance on this theory is erroneous, for Mississippi does not so limit the jury in their deliberations and consideration of the death penalty. This claim is without merit.

*Lockett*, 614 So.2d at 896; *Lockett*, 614 So.2d at 905. Although the Mississippi Supreme Court gave cursory treatment to this issue, that court nonetheless addressed the issue on the merits. The issue is therefore not procedurally barred from review by this Court.

The challenged instruction in each case is Sentencing Instruction 1. Case 1 (R. 659–662); Case 2 (R. 660–663). The instructions are virtually identical, except for the changing of the victim's name in each case. The Court, therefore, will only quote the relevant language of the instruction from Case 1, which states in pertinent part:

> You have found the defendant guilty of the crime of capital murder. You must now decide whether the defendant will be sentenced to death or to life imprisonment. In reaching your decision, you may objectively consider the detailed circumstances of the offense for which the defendant was convicted, and the character and record of the defendant himself.

### A.

> To return the death penalty in this case you must first unanimously find from the evidence beyond a reasonable doubt that one or more of the following facts existed:
>
> 1. The defendant actually killed John Earl Calhoun; or

---

**43.** In *McKoy v. North Carolina*, 494 U.S. 433, 444, 110 S.Ct. 1227, 1234, 108 L.Ed.2d 369 (1990), the Supreme Court concluded that "North Carolina's unanimity requirement impermissibly limits jurors' consideration of mitigating evidence and hence is contrary to our decision in *Mills*." In *Mills v. Maryland*, 486 U.S. 367, 375–384, 108 S.Ct. 1860, 1866–1870, 100 L.Ed.2d 384 (1988), the Supreme Court concluded that a reasonable juror could have interpreted the challenged instructions "as allowing individual jurors to consider only mitigating circumstances that the jury unanimously found." Such a requirement violates the Eighth and Fourteenth Amendments to the United States Constitution. *Id.*

2. The defendant attempted to kill John Earl Calhoun; or

3. The defendant intended that the killing of John Earl Calhoun take place; or

4. The defendant contemplated that let[h]al force would be employed.

### B.

Next, to return the death penalty, *you must find that the mitigating circumstances—those which tend to warrant the less severe penalty, life imprisonment—do not outweigh or overcome the aggravating circumstances—those which tend to warrant the death penalty.*

. . . . [44]

If one or more of these aggravating circumstances is found to exist, then you must consider whether there are *mitigating circumstances which outweigh or overcome the aggravating circumstance(s).*

Consider the following elements of mitigation in determining whether the death penalty should not be imposed:

(1) the age of the defendant at the time of the crime.

(2) any other matter, any other aspect of the defendant's character or record, and any other circumstance of the offense brought to you during the trial of this cause *which you, the Jury, deem to be mitigating on behalf of the defendant.*

*If you find from the evidence that one or more of the preceding elements of mitigation exists, then you must consider whether it (or they) outweigh or overcome the aggravating circumstance(s) you previously found. In the event that you find that the mitigating circumstances do not outweigh or overcome the aggravating circumstances, you may impose the death sentence. Should you find that the miti-*

*gating circumstances, outweigh or overcome the aggravating circumstances, you shall not impose the death sentence.*

*Id.* (emphasis added). With regard to the form of the verdict, Lockett asserts that the following language could be interpreted to require unanimity as to the mitigating circumstances:

We, the Jury, unanimously find that the aggravating circumstance(s) of . . . is/are sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstance(s), and we unanimously find the defendant should suffer death.

*Id.*

Lockett makes several arguments concerning this instruction. He asserts that the requirement that the jury make findings of mitigating circumstances, rather than simply consider any mitigating evidence in the balancing process, would lead a reasonable juror to believe that the findings must be unanimous. Lockett further claims that the use of the phrase, "which you, the Jury, deem to be mitigating," would lead the jury to believe that the mitigating elements must be found unanimously by the entire jury, and that such evidence could not be considered individually by each juror. Finally, Lockett asserts that when viewing the instruction as a whole, especially the fact that the jury was instructed seven times in a four-page instruction to make unanimous findings, there is a reasonable likelihood that the jury interpreted the instruction as requiring unanimous findings of mitigating evidence.

The Fifth Circuit in *Drinkard*, 97 F.3d at 757,[45] reiterated the standard for reviewing challenged jury instructions in a death penalty case:

The proper standard for reviewing a challenged jury instruction in the capital sentencing context is "whether there is a reasonable likelihood that the jury has ap-

---

**44.** This omission is a paragraph listing the aggravating circumstances and the requirement that at least one aggravating circumstance must be unanimously found in order for the jury to return a penalty of death. This language is not relevant to the decision of this particular issue.

**45.** In *Green v. Johnson,* 116 F.3d 1115, 1120 (5th Cir.1997), the Fifth Circuit concluded that *Drinkard* and its progeny "presumably remain prece-

dent in this circuit post–*Lindh* to the extent that they interpret the provisions of the AEDPA and do not conflict with *Lindh 's* conclusion that the chapter 153 amendments do not apply retroactively." This Court similarly concludes that the findings and conclusions of *Drinkard,* to the extent that such findings do not address the provisions of the AEDPA, are binding precedent in the Fifth Circuit.

plied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." ... This "reasonable likelihood" standard does not require the petitioner to prove that the jury "more likely than not" interpreted the challenged instruction in an impermissible way; however, the petitioner must demonstrate more than "only a possibility" of an impermissible interpretation.... We must analyze the challenged jury instruction within the context of the overall jury charge.... "In evaluating the instructions, we do not engage in a technical parsing of this language of the instructions, but instead approach the instructions in the same way that the jury would—with a 'commonsense understanding of the instructions in the light of all that has taken place at the trial.'"

*Id.* at 757 (citations omitted). This Court, therefore, must determine whether viewing this particular instruction in its entirety, and when considering this instruction in the overall context of the trial, there is a reasonable likelihood that the juries in each of Lockett's trials determined that they must make unanimous findings concerning any mitigating evidence in order to weigh such evidence against the aggravating circumstances.

█ The Court concludes that Lockett has failed to prove that the challenged instructions were unconstitutional. Lockett would have the Court review the challenged instructions by "engaging in a technical parsing" of the language. *Drinkard,* 97 F.3d at 757 (citing *Johnson v. Texas,* 509 U.S. 350, 368, 113 S.Ct. 2658, 2669, 125 L.Ed.2d 290 (1993)). Lockett advocates as much in Appendix 1, attached to his Memorandum in Support of Partial Summary Judgment. In Appendix 1, Lockett sets forth the language which was used in *McNeil v. North Carolina,* 494 U.S. 1050, 110 S.Ct. 1516, 108 L.Ed.2d 756 (1990), in one column and select portions of the language which was used in the challenged instructions in his trials. The Court initially notes that the comparison is inapposite because the *McNeil* instructions use the word "unanimously" to modify and/or describe the findings required regarding mitigating evidence.[46] The Court declines to analyze separately each challenged portion of Sentencing Instruction 1 as Lockett has done in his Appendix 1. The Court concludes that when the instruction is analyzed in its entirety, there is no reasonable likelihood that the juries, or any individual members thereof, applied the challenged instructions in a manner which would preclude the consideration of the mitigating evidence offered on Lockett's behalf. The Court further concludes that the challenged instructions did not require Lockett's juries to unanimously agree on mitigating circumstances. Accordingly, Lockett is not entitled to habeas relief based upon this ground.[47]

**Ground Eight:** *The trial court's refusal to instruct the jury in Case II to consider as a mitigating factor that petitioner was under the influence of alcohol and/or drugs violated Mr. Lockett's rights under the Eighth and Fourteenth Amendments to the United States Constitution.*

Lockett asserts that he was entitled to an instruction in Case 2 requiring the jury to

**46.** One of the *McNeil* instructions states as follows:
(3) Do you *unanimously* find beyond a reasonable doubt that the mitigating circumstance or circumstances is, or are, insufficient to outweigh the aggravating circumstances found by you?
Appendix 1. Lockett compares this instruction with that portion of the challenged instructions given in his case which state that:
We, the Jury, unanimously find that the aggravating circumstance(s) of: ... is/are sufficient to impose the death penalty and that there are insufficient mitigating circumstances to outweigh the aggravating circumstance(s)....
Appendix 1. As stated in the text, the Court concludes that these two instructions simply are not comparable because the instruction given in Lockett's trials does not require any unanimous finding with regard to mitigating circumstances.

**47.** The Court notes that the Fifth Circuit in *Wilcher v. Hargett,* 978 F.2d 872, 878 (5th Cir.1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 96, 126 L.Ed.2d 63 (1993), concluded that the *Mills/McKoy* issue of requiring unanimous agreement on mitigating circumstances was a new rule which should not apply to cases which had already been decided at the time it was announced in 1988. Because both of Lockett's direct appeals were decided prior to 1988, he may not take advantage of the rule in this habeas proceeding.

consider in mitigation that he was under the influence of drugs and/or alcohol when the offense was committed. The instruction which Lockett submitted, and which was refused by the trial judge, reads as follows:

> The Court instructs the jury that in considering whether or not to sentence the Defendant Carl Lockett to death or to give him life imprisonment you must consider the following mitigating circumstances:
>
> 1. The offense was committed while the Defendant was under the influence of intoxicating beverages and/or drugs.
>
> 2. The offense was committed under circumstances which the Defendant believed to be in fear of his life from threats of Geraldine Calhoun for his conduct even though the circumstances which the Defendant believed to be justification for his conduct were not sufficient to constitute a defense to the crime.
>
> 3. The age of the Defendant at the time of the crime.[48]

Jury Instruction No. D–3, Case 2 (R. 655). According to Lockett, the trial judge recognized the statutory mitigating circumstance contained in Miss.Code Ann. § 99–19–101(6)(f): "The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired." Despite such recognition, the trial judge refused the requested instruction:

> [T]he instruction is drawn that the jury must mandatorily consider certain mitigating circumstances which is peremptory in nature. I don't think it is the intention of the statute nor the intention of the law that the jury be mandatorily and peremptorily instructed to consider mitigating circumstances which are not listed in the statute and which are not conclusively proved. I think that there is evidence in the case from the confessions of the Defendant where the jury might consider, in their discretion, that he was under the influence of drugs or alcohol, but I don't think it would be proper for the Court to peremptorily instruct the jury that the De-

fendant was under the influence of drugs or alcohol.

Case 2 (R. 582).

The State asserts that because a "catch-all" instruction was given allowing the jury to consider any evidence deemed to be mitigating, the trial court did not err by not granting the requested instruction. The "catch-all" instruction required the jury to consider "any other[ ] matter, any other aspect of the defendant's character or record, and any other circumstance of the offense brought to you during the trial of this cause which you, the jury, deem to be mitigating on behalf of the defendant." Case 2 (R. 661).

Lockett relies on *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), to support this particular ground for relief. In *Penry,* the Supreme Court concluded that "the jury must be able to consider and give effect to any circumstances of the crime" in order to eliminate the "risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty." *Id.* at 328, 109 S.Ct. at 2952.

> Subsequent to *Penry,* the Supreme Court explained that a state's refusal to give additional instructions does not amount to constitutional error unless there is a " 'reasonable likelihood that the jury applied the challenged instruction in a way that prevents the consideration of constitutionally relevant mitigating evidence.' "

*Lackey v. Scott,* 28 F.3d 486, 489 (5th Cir. 1994) (quoting *Johnson v. Texas,* 509 U.S. 350, 367, 113 S.Ct. 2658, 2668, 125 L.Ed.2d 290 (1993) (citation omitted)), *cert. denied,* 513 U.S. 1086, 115 S.Ct. 743, 130 L.Ed.2d 644 (1995). Applying this reasoning, the Fifth Circuit has concluded that no special instruction is warranted concerning voluntary intoxication. *Lackey,* 28 F.3d at 489.

> Unlike *Penry*'s mental retardation and childhood abuse, "voluntary intoxication is not the kind of 'uniquely severe permanent handicap[ ] with which the defendant was burdened through no fault of his own' that requires a special instruction to ensure that the mitigating effect of such evidence

---

48. The Court notes that in Sentencing Instruction 1, the trial court included as a mitigating factor the age of the defendant at the time of the crime.

finds expression in the jury's sentencing decision."

*Id.* (quoting *Cordova v. Collins,* 953 F.2d 167, 170 (5th Cir.) (citation omitted), *cert. denied,* 502 U.S. 1067, 112 S.Ct. 959, 117 L.Ed.2d 125 (1992)).

 The Court concludes that there is no reasonable likelihood that the jury misunderstood the "catch-all" instruction so as to prevent any consideration of Lockett's alleged intoxication at the time of the crime. The only evidence of the intoxication was Lockett's confession, which was admitted during the guilt phase over his objection. The jury was allowed to consider this evidence and to consider Lockett's credibility in determining whether to give such evidence any mitigating effect. The Court concludes that the trial court judge did not err in refusing to give a peremptory instruction requiring the jury to consider evidence of Lockett's intoxication as mitigating.[49] Lockett, therefore, is not entitled to relief based upon this ground.

**Ground Nine:** *The prosecution committed misconduct that rendered both of petitioner's trials fundamentally unfair, depriving him of due process of law in violation of the Fourteenth Amendment to the United States Constitution.*

Lockett asserts that the prosecutor committed misconduct during his closing arguments in the sentencing phases of both of his trials. Lockett relies on *Hill v. Black,* 887 F.2d 513, 516 (5th Cir.1989), *vacated on other grounds,* 498 U.S. 801, 111 S.Ct. 28, 112 L.Ed.2d 6 (1990), for the proposition that the contemporaneous objection bar has not been strictly or regularly followed by the Mississippi Supreme Court as to "highly prejudicial remarks by the prosecution," and thus, cannot provide a sufficient basis for procedurally defaulting this claim. With regard to the merits of this claim, Lockett asserts that the

prosecutor repeatedly referred to the possibility of parole in a deliberate effort to mislead the jury regarding the alternative to a sentence of death. Lockett also asserts that in Case 1, the prosecutor made comments concerning Lockett's lack of remorse. Such comments, according to Lockett, violate his Fifth Amendment privilege against self-incrimination. Finally, Lockett asserts that all of the comments were blatantly designed to expose the juries to extraneous considerations which rendered the trials fundamentally unfair.

The State asserts that the issue of the prosecutor's comments about parole is procedurally barred from review because the objection was not raised in the trial court.[50] According to the State, Lockett's reliance on *Hill* is misplaced.[51] The State finally asserts that the issue of alleged improper prosecutorial comments concerning remorse have never been presented to the state courts for review, and that this Court should consider this issue "unexhausted but unexhaustable."

In rebuttal, Lockett asserts that the State is simply mistaken concerning its reading of *Hill.* Lockett also asserts that the claim concerning the prosecutor's remarks about remorse was presented to the State on direct appeal in Case 1.

The Mississippi Supreme Court in each of Lockett's direct appeals concluded that the issue of prosecutorial misconduct was procedurally barred because Lockett did not raise the issue at trial. *Lockett,* 517 So.2d at 1333; *Lockett,* 517 So.2d at 1354. The Mississippi Supreme Court alternatively addressed the issue on the merits and concluded that the comments made by the prosecutor in each of the trials did not constitute reversible error. Contrary to the assertion of the State, the Mississippi Supreme Court specifically addressed the issue of prosecutorial remarks

---

49. Neither party addresses the portion of the refused instruction concerning alleged threats by Geraldine Calhoun which made Lockett fear for his life. The Court, therefore, will not address this issue.

50. Lockett also asserts that the failure of his counsel to raise the issue at trial constitutes ineffectiveness and is therefore sufficient cause for this Court to address his claim. The State

failed to address this issue in its brief, except to note that Lockett raised the issue and then to include an unfinished sentence in response to the claim. Memorandum of Authorities in Support of Answer at 50.

51. The State claims that the *Hill* holding is just the opposite from what Lockett asserts.

concerning remorse in Case 1. *Lockett,* 517 So.2d at 1334.

██ For this Court to grant habeas relief based upon remarks by the prosecutor, the Court must find more than that the prosecutor's comments were "undesirable or even universally condemned." *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986). The "relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* at 181, 106 S.Ct. at 2471 (citations omitted). In the context of a death penalty case, the comments must have been such as to render the sentencing "fundamentally unfair." *King v. Puckett,* 1 F.3d 280, 286 (5th Cir.1993).

The Court has reviewed the closing arguments of the prosecutor during the sentencing phase in each of Lockett's trials. The Court has given particular attention to those comments which Lockett alleges were improper. *See* Memorandum in Support of Partial Summary Judgment at 19 and n. 16. The Court concludes that the comments made by the prosecutor were not improper. The Court alternatively concludes that even if such comments could be construed to be improper, the comments did not render the sentencing phases of Lockett's trials fundamentally unfair. Lockett is therefore not entitled to habeas relief based upon this ground.

**Ground Ten:** *The trial court's refusal to issue petitioner's requested manslaughter instruction in Case II violated petitioner's rights under the Eighth and Fourteenth Amendments to the United States Constitution.*

Lockett asserts that in a capital case, " 'the jury must be allowed to consider a lesser included noncapital offense if the jury could rationally acquit on the capital crime and convict for the noncapital crime.' " Memorandum in Support of Partial Summary

Judgment at 20 (quoting *Cordova v. Lynaugh,* 838 F.2d 764, 767 (5th Cir.) (citations omitted), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 932 (1988)). Thus, according to Lockett, the trial court in Case 2 erred by refusing to grant his proposed manslaughter instruction, which stated as follows:

If you find from the evidence in this case beyond a reasonable doubt that:

A. The deceased, Geraldine Calhoun, was a living person; and

B. That she died as a result of the Defendant's actions; and

C. That the Defendant's conduct exhibited or manifest [sic] a wanton or reckless disregard for the safety of human life, then you shall find the Defendant guilty of manslaughter.

If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty.

Jury Instruction No. D–4, Case 2 (R. 658). Lockett asserts that it was an error of state law for this instruction not to be given because Lockett's murder charge was predicated on the felony of kidnapping, which is a felony not excluded by the manslaughter statute.[52]

██ The State asserts that this issue is procedurally barred from review by this Court. This issue was not presented to the Mississippi Supreme Court until Lockett's appeal of the denial of his second motion for post-conviction relief. *Lockett,* 656 So.2d at 80–82. That court concluded that the issue was procedurally barred from review because it was not raised previously and because of the three-year time bar contained in the Mississippi Uniform Post–Conviction Collateral Relief Act, Miss.Code Ann. § 99–39–1 *et seq. Id.* at 82–83. The Mississippi Supreme Court observed: "The argument advanced belatedly by Lockett's fourth set of lawyers was not presented on direct appeal by his

---

52. The Mississippi manslaughter statute states that:

The killing of a human being without malice, by the act, procurement, or culpable negligence of another, while such other is engaged in the perpetration of any felony, except rape, burglary, arson, or robbery, or while such other is attempting to commit any felony besides such as are above enumerated and excepted, shall be manslaughter.

Miss.Code Ann. § 97–3–27.

second group of lawyers nor was it presented by Lockett's third team of attorneys in his first application for post-conviction relief." *Id.* at 82. With regard to the merits of the claim, the State asserts that Lockett's jury was given a lesser included offense instruction defining murder, as opposed to capital murder, and thus no federal constitutional violation occurred. The State claims that any error resulting from the failure to give the requested manslaughter instruction was merely a state law error which is not cognizable in a habeas petition.

The Court agrees with the arguments presented by the State with regard to this ground. Initially, the Court concludes that this claim is procedurally barred from review. Contrary to Lockett's assertion to the contrary, Mississippi has regularly applied the three-year time bar to claims presented in applications for post-conviction relief. Furthermore, the denial of Lockett's first application for post-conviction relief is a bar to a second and successive application.

■■■■ The Court further finds that it is entitled to rely on the procedural bar because Lockett has failed to demonstrate a sufficient reason for his failure to present the claim to the state courts in a procedurally proper manner. When a petitioner has procedurally defaulted his claims in state court, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991). To establish "cause" necessary to excuse a procedural default, there must be "something *external* to the petitioner, something that cannot fairly be attributed to him . . . ." *Id.* at 753, 111 S.Ct. at 2566, 115 L.Ed.2d 640, 671. Some examples of objective factors which constitute "cause" to excuse a procedural default include "interference by officials that makes compliance with the State's procedural rule impracticable" and "a showing that the factual or legal basis for a claim was not reasonably available to [petitioner]." *McCleskey v.*

*Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (citations and internal quotations omitted).

Lockett asserts that ineffective assistance of counsel constitutes cause for a procedural default. Lockett further asserts that to the extent his counsel on direct appeal (his second group of attorneys) and his counsel on his first application for post-conviction relief (his third group of attorneys) failed to raise this issue, all of them were ineffective. The Court finds such an assertion untenable. Lockett may not simply make bold assertions that all of his previous counsel have been ineffective to support new and different claims each time he is represented by new and different attorneys.

Because Lockett has failed to demonstrate cause, the Court need not decide whether Lockett suffered actual prejudice as a result of his failure to raise this asserted claim in state court. *See Saahir v. Collins,* 956 F.2d 115, 118 (5th Cir.1992).

Finally, this Court may review the Lockett's defaulted claim if he can show that the failure of the Court to review the claim will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565. The issue of fundamental miscarriage of justice "is concerned with actual as compared with legal innocence." *Montoya v. Collins,* 988 F.2d 11, 12–13 (5th Cir.) (citing *Sawyer v. Whitley,* 505 U.S. 333, 339–40, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992)), *cert. denied,* 507 U.S. 1002, 113 S.Ct. 1630, 123 L.Ed.2d 263 (1993). Lockett does not assert that he is actually innocent of the murder of Geraldine Calhoun. The Court therefore concludes that a fundamental miscarriage of justice will not result if this claim is not addressed on the merits.

Alternatively, the Court concludes that the only possible error which may have occurred, and over which this Court has no jurisdiction, would be an error of state law. As noted by the State, Lockett's jury in Case 2 received an instruction on the crime of murder which would have allowed them to convict Lockett of some crime other than capital murder. *See Mann v. Scott,* 41 F.3d 968, 976–77 (5th

Cir.1994) (discussing the relevant Supreme Court case law concerning the failure to give a lesser included offense instruction). The giving of such an instruction, assuming that Lockett could have been convicted of some crime other than capital murder,[53] is all that was constitutionally required. Therefore, the Court alternatively concludes that Lockett is not entitled to habeas relief based upon the merits of this claim.

**Ground Eleven:** *Petitioner was brought into the courtroom in Case 1 in shackles, in violation of his right to due process under the Fourteenth Amendment to the United States Constitution.*

Lockett asserts that being brought into the courtroom in shackles violated his right to be protected from " 'substantial danger of destruction in the minds of the jury of the presumption of innocence.' " Memorandum in Support of Evidentiary Hearing at 41 (quoting *Hickson v. State*, 472 So.2d 379, 383 (Miss.1985)). Prior to trial, Lockett submitted a motion *in limine* which was granted by the trial judge to prohibit the jury from viewing him in shackles.

The State asserts that factual findings were made by the state court which are entitled to a presumption of correctness. The State does not state the nature of these factual findings or upon which factual findings it relies. The State asserts that Lockett is not entitled to an evidentiary hearing on this claim.

■■■ The Court finds that Lockett is not entitled to an evidentiary hearing or to habeas relief based upon this asserted ground. The decision whether to restrain a defendant lies within the sound discretion of the trial judge. *Illinois v. Allen*, 397 U.S. 337, 343–44, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970). Although the trial judge in this matter determined that Lockett should not be shackled, a mistake was made by the officers escorting Lockett by bringing him into the courtroom in shackles. The Mississippi Supreme Court determined that even if the jury in fact saw Lockett in shackles, a matter which was the subject of dispute in the state court, Lockett was not deprived of a fair trial as a result of the mistake. *Lockett*, 517 So.2d at 1330. "Here, at worst the defendant was ten feet in the courtroom for a few minutes. There is no evidence indicating that this incident occurred intentionally." *Id.* The Court agrees with this finding and concludes that Lockett has failed to show how he might have been prejudiced even if the jury saw him in shackles. Lockett is not entitled to habeas relief based upon this ground.

**Ground Twelve:** *The indictments are void as to capital murder because they fail to set out the essential elements of the felonies underlying the offense of burglary in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.*

Lockett asserts that the indictments against him are fatally defective because they charge him with murder while engaged in the crime of burglary, but they fail to set forth the essential elements of burglary. Lockett asserts four reasons why the indictments should be declared void: (1) the indictments fail to charge him with "carrying away," which is an essential element of larceny, the crime upon which burglary is based; (2) the indictments do not state that Lockett intended to carry away the "personal property of another;" (3) the indictments fail to charge that Lockett intended to permanently deprive the Calhouns of the property which he took from them;[54] and (4) the allegation that Lockett intended to "do violence" to the

---

53. The Court is assuming, *arguendo*, that the jury in Case 2 could have acquitted Lockett of capital murder and convicted him of murder. *Mann*, 41 F.3d at 976. However, given the chilling confession made by Lockett shortly after the crime, the Court is making the assumption only for the purposes of argument and makes no finding that Lockett could have indeed been acquitted of the capital murder charge.

54. The Court fails to see how Lockett could not have intended a permanent deprivation of the property, given that he murdered both persons to whom the property belonged.

Calhouns is insufficient because "doing violence" is not a crime in Mississippi. For these reasons, Lockett claims that the indictments are void under Mississippi law and that his convictions should therefore be vacated.

The State asserts that if the question of the sufficiency of the indictment has been presented to the highest state court of appeals, the consideration of the issue is foreclosed in a federal habeas corpus proceeding. This issue was presented to the Mississippi Supreme Court in Lockett's second applications for post-conviction relief. That court declined to consider the issue noting that "[t]hree sets of attorneys have failed to raise this issue which is both time barred and successive writ barred." *Lockett,* 656 So.2d at 73; *Lockett,* 656 So.2d at 78–79 (concluding that the claim was time barred and successive writ barred based upon the reasoning set forth in the companion case).

In rebuttal, Lockett asserts that because the Mississippi Supreme Court found the issue to be procedurally barred, this Court must address the merits. According to Lockett, unless a state court has addressed the issue on the merits, this Court must examine the indictments to see whether they were sufficient to vest jurisdiction in the state trial courts.

The Fifth Circuit has addressed this specific issue:

> The sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction.... Where the state courts have held that an indictment is sufficient under state law, a federal court need not address that issue.

*McKay v. Collins,* 12 F.3d 66, 68 (5th Cir.), *cert. denied sub nom Williams v. Scott,* 513 U.S. 854, 115 S.Ct. 157, 130 L.Ed.2d 95 (1994). The *McKay* court compared two previous Fifth Circuit cases, *Alexander v. McCotter,* 775 F.2d 595 (5th Cir.1985) and *Garrett v. McCotter,* 807 F.2d 482 (5th Cir.

1987), to determine whether the state court had addressed the issue:

> In *Alexander,* Petitioner asserted that his burglary indictment was fundamentally defective. The petition was denied and Petitioner appealed. The Fifth Circuit affirmed, noting that the Texas Court of Criminal Appeals in declining to grant relief "necessarily, though not expressly, held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose." 775 F.2d at 599. In *Garrett,* Petitioner also asserted that his indictment was fundamentally defective. The Texas Court of Criminal Appeals issued an order denying and dismissing the petition as improvidently set. The Fifth Circuit held that the "improvidently set" order was not a ruling on the merits. The Court described a number of reasons why a case would be dismissed as improvidently set and compared the situation to that presented in *Alexander* in which the denial was on the merits. 807 F.2d at 484. Based upon the Court's statements in *Garrett* noting the many reasons, other than a ruling on the merits, for which a case could be dismissed as improvidently set and also upon the *Garrett* court's apparent recognition that *Alexander* would still control situations in which the decision was on the merits, we hold that *Alexander* governs these cases and would preclude federal habeas review of the state courts' decisions.

*Id.* The parties have not cited, and the Court has not found, any Fifth Circuit precedent concerning whether procedural default of the claim in state court would preclude habeas review of the sufficiency of an indictment in federal court. Although the issue was addressed by the district court in *McKay,* the Fifth Circuit declined to address the issue noting that the respondent did not argue the procedural default issue. *Id.* at 68 n. 3.

The Court concludes that the Mississippi Supreme Court clearly declined to consider this issue on the merits by finding the issue to be procedurally barred from review. Based upon the holding in *Garrett,* this Court will examine the indictments to determine

whether they were sufficient to vest jurisdiction in the trial courts. *Garrett,* 807 F.2d at 484.

The indictments for each murder are similar, especially as to the robbery portion. Therefore, the Court will only quote the indictment from Case 1 which states as follows:

> Carl Daniel Lockett ... did ... wilfully, unlawfully, feloniously and of his malice aforethought kill and murder John Earl Calhoun, a human being, while he the said Carl Daniel Lockett, was engaged in the crimes of burglary and robbery, in that he had forcibly, burglariously, unlawfully, wilfully and feloniously broken and entered into the dwelling house of the said John Earl Calhoun and Geraldine Calhoun with the intent to, once inside, steal the personal property situated therein; and further in that he did then wilfully, unlawfully, feloniously, violently and forcibly take, steal, seize, rob and carry away from the person and from the presence of the said John Earl Calhoun and from the person and from the presence of Geraldine Calhoun a certain billfold of value along with its contents of value and all of same being the personal property of the said John Earl Calhoun: and the Grand Jury charges that such capital murder is in violation of § 97–3–19(2)(e) of the Mississippi Code of 1972, as amended....

Indictment, Case 1 (R. 403).[55]

The Mississippi Supreme Court has addressed the sufficiency of an indictment under the felony murder statute. *Culberson v. State,* 379 So.2d 499 (Miss.1979), *cert. denied,* 449 U.S. 986, 101 S.Ct. 406, 66 L.Ed.2d 250 (1980). The defendant in that case challenged the sufficiency of an indictment which stated that he "did unlawfully, wilfully & feloniously, with malice aforethought, kill and murder one Grady V. Evans, a human being, while engaged in the commission of robbery upon him...." *Id.* at 503. The defendant asserted that the testimony at his trial only

proved an attempted robbery, rather than robbery, and that the indictment was therefore insufficient. *Id.* The *Culberson* court concluded that:

> It is enough if the constituent offense is related to the greater charge in the indictment by language clearly informing the indictee of the underlying felony in which he was engaged, or its attempt, at the time of the homicide. In our opinion, the statutory language, "engaged in the commission of," includes the attempt to commit the constituent felony, the completed constituent felony, as well as the immediate post-felony acts of the accused so connected to the cardinal charge as to become part of it, the res gestae.... The language of the indictment was sufficient to apprise Culberson of the constituent charge against him, thereby enabling him to prepare a defense to it, if any he had.

*Id.* (citations omitted).

■ The Court concludes that the indictments charging Lockett with murder were sufficient in each case. The language of the indictments against Lockett in each case was more than sufficient to apprise him of the underlying felony upon which the charge of capital murder was based. The Court further concludes that the indictments need not contain any "magic language," as Lockett appears to be advocating, in order for them to be sufficient under Mississippi law. Lockett is therefore not entitled to relief based upon the ground that the indictments were insufficient under Mississippi state law.

To the extent that Lockett is asserting the indictments were deficient under federal constitutional precedent, the Court concludes that this argument is unavailing.

> The standard for determining the sufficiency of an indictment is based upon practical, not technical considerations. ... The test involves minimal constitutional standards, not whether a better indictment could have been written.... The essential elements of the offense, including

---

55. The indictment in Case 2 (R. 3) is similar except that it includes the facts surrounding the murder of Geraldine Calhoun, including kidnapping and the taking of property from the Calhoun automobile. Both indictments allege a violation of Miss.Code Ann. § 97–3–19(2)(e), the Mississippi felony murder statute, which provides in relevant part that "[t]he killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases: ... [w]hen done with or without any design to effect death, by any person engaged in the commission of the crime of rape, burglary, kidnapping, ... or in any attempt to commit such felonies...."

knowledge or intent, must be included in the indictment but need not be expressed in any specific terms.... The "plain and sensible meaning of the language used" may give the defendant notice sufficient to meet the requirements of the sixth amendment.... An indictment should be found sufficient unless no reasonable construction of the indictment would charge the offense for which the defendant has been convicted.

*McKay*, 12 F.3d at 69 (citations omitted). The Court concludes that the indictments charging Lockett with felony murder are also sufficient to meet this federal constitutional standard. Lockett is therefore not entitled to relief based upon this ground.

### *Jury Instructions*

█ Lockett challenges various jury instructions which were given in one or both of his trials in Grounds Thirteen through Sixteen. Because the law concerning habeas review of a challenged jury instruction is generally the same with regard to all of the challenged instructions, the Court will address these grounds together. The Court initially will set forth the grounds and will address the particular facts of each where necessary.

**Ground Thirteen:** *Petitioner's juries may have found him guilty of capital murder without a finding beyond a reasonable doubt that he committed the essential elements of the offense in violation of Petitioner's rights under the Fourteenth Amendment to the United States Constitution.*

**Ground Fourteen:** *The failure of the trial courts to grant a mercy instruction at the penalty phases of each trial deprived petitioner of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.*[56]

**Ground Fifteen:** *The charge on capital murder given in both trials deprived petitioner of his right to a unanimous verdict in violation of the Fourteenth Amendment to the United States Constitution.*

**Ground Sixteen:** *The submission to the jury in Case I of the aggravating circumstance alleging the commission of a murder in the course of a burglary, robbery and/or kidnapping deprived petitioner of his right to a unanimous verdict in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.*

Lockett asserts in Grounds Thirteen through Sixteen that various jury instructions were defective. Specifically, he claims that each of his juries was not instructed on the specific elements of the underlying felonies upon which the charge of capital murder was based. Lockett also claims that by giving instructions concerning these felonies in the alternative, i.e., that Lockett was engaged in the crime of "burglary, robbery and/or kidnapping" at the time of the killings, each jury could have returned a guilty verdict without a unanimous finding concerning the underlying felony upon which the particular murder was based. Finally, Lockett asserts that the jury in Case 1 did not receive any instruction defining the elements of kidnapping, and that this verdict must there-

---

56. This claim is based upon an instruction given to each jury that "you need not find any mitigating circumstances in order to return a sentence of life imprisonment." Case 1 (R. 670); Case 2 (R. 652). Lockett claims that the jury should also have been instructed that a sentence of life imprisonment could be imposed even if the jury found the existence of one or more aggravating circumstances. The Court concludes that the instruction which Lockett asserts should have been given falls within the category of a mercy instruction which is not constitutionally required in any given case. *See Johnson v. Texas*, 509 U.S. 350, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993); *Saffle v. Parks*, 494 U.S. 484, 492–95, 110 S.Ct. 1257, 1262–1264, 108 L.Ed.2d 415 (1990).

**240**

fore be reversed.[57]

The State asserts that Lockett's claim challenging the essential elements of the underlying felonies is procedurally barred because the Mississippi Supreme Court declined to address this issue which was not raised at trial. *Lockett,* 517 So.2d at 1332–33; *Lockett,* 517 So.2d at 1355. The State further asserts that the claim concerning a unanimous verdict has never been presented to the state courts and should be found procedurally barred by this Court.[58] Finally, with regard to the use of kidnapping as an aggravating circumstance in Case 1, the State relies on the finding by the Mississippi Supreme Court that (1) Lockett's trial counsel failed to make a contemporaneous objection; and (2) the inclusion of the work "kidnapping" was mere surplusage because the evidence supported a finding of burglary and robbery.

As a general rule, jury instructions which contain errors of state law do not form the basis for federal habeas relief. *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Habeas relief may only be granted when the challenged instruction "so infect[s] the entire trial that the resulting conviction violated due process." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977) (concluding that the relevant question is whether the challenged instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous or even universally condemned); *see also Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (concluding that an indefinite instruction is not erroneous unless there is a "reasonable likelihood" that the jury drew improper conclusions from that instruction); *Kinnamon v. Scott,* 33 F.3d 462, 465–66 (5th Cir.) (quoting *Henderson,* 431 U.S. at 154, 97 S.Ct. at 1736–1737), *cert. denied,* 513 U.S. 1054, 115 S.Ct. 660, 130 L.Ed.2d 595 (1994).

The Court concludes that as to Ground Thirteen, each trial judge correctly instruct-

ed the jury concerning the elements of the underlying felony of burglary. Case 1 (R. 651–52); Case 2 (R. 555–56). The Court further concludes that to the extent that either of these instructions is not as crystal clear as Lockett would have preferred, the instructions are also not nearly so vague as Lockett would have the Court believe. Having reviewed each instruction carefully, the Court concludes that even if either instruction was not entirely proper, the instruction did not so infect the entire trial that the resulting conviction of Lockett violates due process. Given Lockett's confession to each murder, the Court concludes that there is no reasonable likelihood that the respective juries drew any improper conclusions from the challenged instructions. Lockett is therefore not entitled to habeas relief based upon this ground.

With regard to Ground Fifteen, the Court similarly finds that Lockett has failed to show a due process violation. Once again, while the instructions could have been drafted more clearly, the Court cannot conclude that the instructions allowed the jury to convict Lockett of the crime of capital murder without making a unanimous finding that he was engaged in the commission of a felony during the killings. Lockett is therefore not entitled to habeas relief based upon this ground.

As to Ground Sixteen, the Court is somewhat more troubled. The Court has concluded that during the guilt phase of the trial, the jury in Case 1 was properly instructed as to the underlying felonies of burglary and robbery. The jury in Case 1, however, did not receive any substantive instruction concerning the felony of kidnapping. Nevertheless, the jury was instructed during the sentencing phase that it could consider as an aggravating circumstance whether the murder occurred during the

---

**57.** The Court has previously addressed the mercy instruction issue, *see supra* at 239, n. 56, and will not provide any further discussion of that particular ground in this opinion.

**58.** Lockett correctly asserts that this claim was presented to the Mississippi Supreme Court on direct appeal. *Lockett,* 517 So.2d at 1332–33;

*Lockett,* 517 So.2d at 1355. Although the Mississippi Supreme Court concluded that the claim was procedurally barred in each case because Lockett's trial counsel failed to raise a contemporaneous objection at trial, the claim was indeed raised in each of Lockett's direct appeals in state court.

course of a burglary, robbery and/or kidnapping. Case 1 (R. 660). The jury returned a verdict tracking the language of the instruction stating that the murder "was committed while the defendant was engaged in burglary, robbery, and/or kidnapping, or in an attempt to commit one or more of such crimes." Case 1 (R. 679). Despite this language, the Court concludes that when considering the instructions as a whole, the addition of the single word kidnapping did not produce a sentence of death which the jury otherwise would not have returned had that single word been omitted from the instruction. *See supra* at 229–30 (quoting *Drinkard*, 97 F.3d at 757 (stating that a "petitioner must demonstrate more than 'only a possibility' of an impermissible interpretation" of a challenged instruction at the sentencing phase in order to obtain habeas relief)). Lockett is not entitled to habeas relief based upon this ground.

The Court has thoroughly reviewed the jury instructions given in each of Lockett's trials. Case 1 (R. 646–71); Case 2 (R. 552–59; 611–16). After conducting this review, the Court finds that each of Lockett's juries was correctly instructed in both the guilt and sentencing phases of each trial.[59] When considering the instructions as a whole, the Court concludes that there is no reasonable likelihood that the juries could have construed the instructions as a whole in an improper manner. Lockett is therefore not entitled to relief based upon Grounds Thirteen through Sixteen.

■ Alternatively, the Court finds that even if the giving of any of these challenged instructions could be viewed as a constitutional violation, Lockett has failed to show that he is entitled to habeas relief. The United States Supreme Court has adopted the harmless-error standard as set forth in *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946), for habeas review of constitutional errors at trial. *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

The test under the *Kotteakos* standard is whether the error "had substantial and injurious effect or influence in determining

the jury's verdict." . . . Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual prejudice."

*Id.* at 637, 113 S.Ct. at 1722 (citing *Kotteakos*, 328 U.S. at 776, 66 S.Ct. at 1253 and *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986)). The Supreme Court thoroughly explained its reasons for applying a less stringent standard of review in the habeas context:

Direct review is the principal avenue for challenging a conviction. "When the process of direct review—which, if a federal question is involved, includes the right to petition this Court for a writ of certiorari—comes to an end, a presumption of finality and legality attaches to the conviction and sentence. The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials." . . .

In keeping with this distinction, the writ of habeas corpus has historically been regarded as an extraordinary remedy, "a bulwark against convictions that violate 'fundamental fairness.'" . . . "Those few who are ultimately successful [in obtaining habeas relief] are persons whom society has grievously wronged and for whom belated liberation is little enough compensation." . . . Accordingly, it hardly bears repeating that " 'an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.' "

*Id.* 507 U.S. at 633–34, 113 S.Ct. at 1719–1720 (citations omitted).

The *Brecht* Court then concluded that the *Kotteakos* harmless-error standard of review should apply "in determining whether habeas relief must be granted because of constitu-

---

**59.** The only exception to this conclusion is the previous finding by the Court that the jury in

Case 1 should not have been instructed concern-

tional error of the trial type." [60] *Id.* at 638, 113 S.Ct. at 1722. Thus, "where a judge, in a habeas proceeding, applying this standard of harmless error, 'is in grave doubt as to the harmlessness of an error,' the habeas 'petitioner must win.'" *California v. Roy,* [61] —— U.S. ——, ——, 117 S.Ct. 337, 338, 136 L.Ed.2d 266 (1996) (quoting *O'Neal v. McAninch,* 513 U.S. 432, 437, 115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995)). [62]

The Court concludes that in this case, as to each of the claims raised in Grounds Thirteen through Sixteen, there is no grave doubt as to the harmlessness of any asserted error. The Court further concludes that Lockett does not fall within that class of persons "whom society has grievously wronged and for whom belated liberation is little enough compensation." Thus, even if the alleged errors in these instructions rise to the level of a constitutional violation, an assertion which this Court has previously concluded did not occur in this case, such a violation does not warrant habeas relief in this particular case.

**Ground Seventeen:** *The submission of the same underlying felonies to elevate the charge to capital murder to elevate it once again in the penalty phase deprived petitioner of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.*

Lockett asserts that it was error for each of his juries to be permitted to consider twice that the murder was committed in the course of a robbery. Each jury was instructed concerning the elements of robbery in the guilt phase. Each jury was further instructed during the sentencing phase to consider, as an aggravating circumstance, whether the murder was committed during the course of a robbery. Lockett asserts that other states with sentencing schemes similar to Mississippi have held that "double counting" is unconstitutional. Memorandum in Support of Partial Summary Judgment at 26–27 (citing *State v. Middlebrooks,* 840 S.W.2d 317, 346 (Tenn.1992), *cert. dismissed,* 510 U.S. 124, 114 S.Ct. 651, 126 L.Ed.2d 555 (1993); *Engberg v. Meyer,* 820 P.2d 70, 91–92 (Wyo. 1991)). Lockett has failed to cite any case law, either from the Fifth Circuit or the

---

ing the heinous, atrocious or cruel aggravating factor. *See supra* at 227–29.

**60.** The *Brecht* Court distinguished between "trial error" and "structural defects in the constitution of the trial mechanism:"

Trial error "occur[s] during the presentation of the case to the jury," and is amenable to harmless-error analysis because it "may ... be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]." ... At the other end of the spectrum of constitutional error lie "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." ... The existence of such defects—deprivation of the right to counsel, for example—requires automatic reversal of the conviction because they infect the entire trial process.

*Brecht,* 507 U.S. at 629, 113 S.Ct. at 1717.

**61.** The Court notes that *Brecht* involved a clear violation of the defendant's right to remain silent, a federal constitutional violation, as recognized by the holding in *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). *Brecht,* 507 U.S. at 628, 113 S.Ct. at 1716. *Doyle* held that "'the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving Miranda warning, violate[s] the Due Process Clause of the

Fourteenth Amendment.'" *Id.* (quoting *Doyle,* 426 U.S. at 619, 96 S.Ct. at 2245). Subsequent Supreme Court cases have recognized the applicability of this standard to other types of trial errors involving only questions of state law, including errors in jury instructions defining the crime, *see California v. Roy,* —— U.S. ——, ——–—— ——, 117 S.Ct. 337, 338–39, 136 L.Ed.2d 266 (1996), and errors in jury instructions concerning the state of mind necessary for conviction, *see O'Neal v. McAninch,* 513 U.S. 432, 436, 115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995). Because of these subsequent Supreme Court cases recognizing the applicability of this standard to many types of state-court trial errors, the *Brecht* harmless-error standard will be applied by this Court as the standard of review to Lockett's claims raised in Grounds Thirteen through Sixteen.

**62.** This standard is much more lenient than the "harmless beyond a reasonable doubt" standard applied by the Supreme Court in *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967), a case decided by the Supreme Court on direct review. *Brecht,* 507 U.S. at 630, 113 S.Ct. at 1717. That standard requires that a conviction be vacated if there is a "reasonable possibility" that trial error contributed to the verdict. *Id.* at 637, 113 S.Ct. at 1721 (quoting *Chapman,* 386 U.S. at 24, 87 S.Ct. at 828).

Supreme Court, holding that the Mississippi capital sentencing scheme is unconstitutional.

The State asserts that the United States Supreme Court has upheld the sentencing schemes of other states which employ a system of "double counting," and that this Court should adhere to those precedents. *See Tuilaepa v. California,* 512 U.S. 967, 970–972, 114 S.Ct. 2630, 2634–35, 129 L.Ed.2d 750 (1994); *Lowenfield v. Phelps,* 484 U.S. 231, 244–46, 108 S.Ct. 546, 554–555, 98 L.Ed.2d 568 (1988). The State also asserts that the Mississippi Supreme Court, relying on *Lowenfield,* has continuously held that the use of an underlying felony as an aggravating factor does not violate any constitutional right. *See* Memorandum of Authorities in Support of Answer at 65–66 (citing numerous Mississippi cases).

▪ The Court agrees with the State that the Mississippi capital sentencing scheme, which allows the jury to consider the underlying felony as an aggravating factor during sentencing, is not unconstitutional. The rationale of the Supreme Court in *Lowenfield* is instructive on this issue:

> It seems clear to us from this discussion that the narrowing function required for a regime of capital punishment may be provided in either of these two ways: The legislature may itself narrow the definition of capital offenses, as Texas and Louisiana have done, so that the jury finding of guilt responds to this concern, or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase. . . .
>
> Here, the "narrowing function" was performed by the jury at the guilt phase when it found defendant guilty of three counts of murder under the provision that "the offender has a specific intent to kill or to inflict great bodily harm upon more than one person." The fact that the sentencing jury is also required to find the existence of an aggravating circumstance in addition is no part of the constitutionally required narrowing process, and so *the fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm.*

There is no question but that the Louisiana scheme narrows the class of death-eligible murderers and then at the sentencing phase allows for the consideration of mitigating circumstances and the exercise of discretion. The Constitution requires no more.

*Lowenfield,* 484 U.S. at 246, 108 S.Ct. at 555 (emphasis added) (citations omitted). Based upon this authority, the Court concludes that allowing the jury to find robbery as an aggravating circumstance, even though each jury had already concluded that each murder was committed during the course of a robbery, the so-called "double counting," does not violate any identifiable constitutional right. Lockett is therefore not entitled to relief based upon this ground.

**Ground Eighteen:** *The trial court's error in both of petitioner's trials of admitting petitioner's prior conviction as an aggravating circumstance rendered his trials fundamentally unfair in violation of the Fourteenth Amendment to the United States Constitution.*

Lockett asserts that there was insufficient evidence to allow each jury, during the sentencing phase, to consider as an aggravating circumstance that Lockett was "under sentence of imprisonment." Case 1 (R. 660); Case 2 (R. 661). Each jury found this aggravating factor and returned a sentence of death. Case 1 (R. 679); Case 2 (R. 666). Lockett claims that the sole evidence presented by the State was a judgment entered on April 22, 1983, by a Texas state court sentencing Lockett to five years probation for theft of an automobile. Case 1 (R. 616–619); Case 2 (R. 596–602). Lockett argues that his unrebutted statement in his confession, that he was supposed to be off of probation in two years with good behavior, supports his claim that this aggravating circumstance should not have been presented to the jury. Case 2 (R. 970–71). Lockett concedes that this portion of his confession was redacted for presentation to the jury during the guilt phase. He asserts, however, that the trial judge in each case was aware of this portion of his confession and should have relied on it and refused to allow the jury to consider the prior conviction as an aggravating circumstance. Ac-

cording to Lockett, "[i]f there is proof that the probation was indeed subsequently shortened such that Mr. Lockett was not on probation at the time of the offense, then Mr. Lockett could not have been 'under sentence of imprisonment.'"[63] Memorandum in Rebuttal at 38. Finally, Lockett asserts that this error was especially egregious in Case 1 where the jury asked the judge, "Was he under sentence of imprisonment at the time of the crime?" and the judge responded: "You must make this determination from the evidence before you and further instructions on this matter cannot be given." Case 1 (R. 657).

The State relies on the decision by the Mississippi Supreme Court in this matter that a person on probation is under a sentence of imprisonment for the purposes of allowing an instruction on this particular aggravating factor. *Lockett,* 517 So.2d at 1337; *Lockett,* 517 So.2d at 1355. The State further asserts that Lockett's statement in his unsworn confession is not sufficient evidence to rebut a certified copy of a criminal conviction.

Although Lockett challenges the sufficiency of the evidence in allowing the jury to consider this particular aggravating circumstance, the Court views this issue as a challenge to the admissibility, rather than the sufficiency, of the evidence of Lockett's prior conviction. The Court concludes that the only reason the respective trial judges granted an instruction allowing each jury to consider the prior conviction as an aggravating circumstance is because of the admission into evidence, over an objection by Lockett's counsel, of a certified copy of Lockett's Texas criminal conviction. Therefore, the Court will analyze this claim according to the habeas jurisprudence concerning evidentiary rulings, rather than from a sufficiency of the evidence point of view.

■ When considering a habeas petition, a federal court reviewing state evidentiary rulings does not sit as a super state supreme court to review error under state law. *Bridge v. Lynaugh,* 838 F.2d 770 (5th Cir. 1988). Admissibility of evidence is a matter of state law, and only a contention that the admission of the challenged evidence rendered the trial fundamentally unfair or violated a specific constitutional right will be considered in a federal collateral proceeding. *Edwards v. Butler,* 882 F.2d 160, 164 (5th Cir.1989); *Johnson v. Blackburn,* 778 F.2d 1044, 1050 (5th Cir.1985) (citing *Meyer v. Estelle,* 621 F.2d 769, 771 (5th Cir.1980)). An evidentiary error in a state trial does not justify federal habeas corpus relief unless it is of such magnitude as to constitute a denial of fundamental fairness under the Due Process Clause. *Skillern v. Estelle,* 720 F.2d 839, 852 (5th Cir.1983), *cert. denied,* 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984). In determining the issue of fundamental fairness, the failure to admit evidence can justify habeas corpus relief only if it is material in the sense of a crucial, critical, highly significant factor in the context of the entire trial. *Thomas v. Lynaugh,* 812 F.2d 225, 230 (5th Cir.), *cert. denied,* 484 U.S. 842, 108 S.Ct. 132, 98 L.Ed.2d 89 (1987).

■ The Court concludes that allowing each jury in Lockett's respective murder trials to consider his prior conviction as an aggravating circumstance did not render these trials fundamentally unfair in violation of the Fourteenth Amendment to the United States Constitution. Lockett has offered absolutely no evidence, other than the statement in his confession, to rebut the certified copy of the judgment from the Texas state court. Furthermore, because the evidence was offered during the sentencing phase of each trial, presumably Lockett could have offered that portion of his confession which was redacted during the guilt phases and upon which he now relies so heavily, as evidence that he was no longer subject to a sentence of imprisonment at the time he committed the murders. Lockett has failed to present any evidence to this Court, despite being provided ample time and resources to

---

**63.** Lockett offered no proof at either of his trials, and he offers none to this Court, that his probation for the Texas conviction was indeed subsequently shortened as he claimed in his confession to the murders. Absent any such proof, which

Lockett has had more than 10 years to obtain, the Court will not grant habeas relief based upon this ground for the reasons set forth in the text of this opinion.

do so, that he was no longer on probation from the Texas conviction at the time of his murder trials. Absent any such evidence, the Court concludes that Lockett has failed to prove that any constitutional violation occurred. Lockett is therefore not entitled to habeas relief based upon this ground.

**Ground Nineteen:** *The confessions introduced against petitioner at both trials were involuntary in violation of the Fifth and Fourteenth Amendments to the United States Constitution.*

Lockett asserts that his confession was involuntary due to his drug use on the day of his arrest. According to Lockett, his unrebutted testimony during the suppression hearing is that on the day of the arrest, he smoked fifteen to twenty marijuana joints, took eighteen speed pills and drank three beers. Case 2 (R. 1178–80). Lockett further asserts that the deputies who arrested him did not test him for drug intoxication, despite Deputy Hulon Craft's knowledge of Lockett's drug problem. Finally, Lockett asserts that on the day of his arrest, Sheriff J.B. Torrence told him to confess or he would "have to account for that when Judgment Day comes". Case 1 (R. 432); Case 2 (R. 37).[64]

The State asserts that the voluntariness of Lockett's confessions was fully litigated at trial and on direct appeal. The State further asserts that the factual findings made by the state court are entitled to a presumption of correctness. Based upon these factual findings, the state court concluded that Lockett's confession was voluntarily given. Because Lockett received a full and fair hearing on this issue in state court, the State asserts that he is not entitled to a second evidentiary hearing in this Court on this ground.

Judge Robert L. Goza conducted an extensive evidentiary hearing in Case 1 concerning the suppression of Lockett's confession and the suppression of the evidence obtained based upon a search warrant which Lockett asserts was invalid. Case 1 (R. 1–400). With regard to Case 2, which was tried before Judge Alfred G. Nicols, Jr., the parties stipulated that Judge Nicols could review the transcript of the suppression hearing rather than conduct another hearing to obtain the same testimony. Case 2 (R. 802).[65] The testimony in the evidentiary hearing before Judge Goza reveals that Lockett signed five waiver of rights forms over a four-day period.[66] The confession taped on December 15, 1985, which was given in the presence of Investigator Ernest Burnham, an employee of the District Attorney, and Deputy Sheriff Cecil McCrory, an employee of the Rankin County Sheriff's Department, was the only confession by Lockett admitted into evidence. The record reflects that Sheriff J.B. Torrence was present during the original interrogation of Lockett on December 14, 1986. Sheriff Torrence was not present at the December 15, 1985, interrogation, the tape of which was admitted as evidence against Lockett in both trials.

Where the State has provided an opportunity for a full and fair consideration of the violation of a constitutional right, federal habeas may not be granted unless the habeas petitioner can show that he was denied such a hearing in state court. *See Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976) (addressing this issue in a Fourth Amendment context); *see also Keeney v. Tamayo–Reyes,* 504 U.S. 1, 8–10, 112 S.Ct. 1715, 1719–1720, 118 L.Ed.2d 318 (1992) (stating with regard to exhaustion

---

**64.** The only evidence submitted by Lockett to support the alleged statement by Sheriff Torrence is a newspaper article quoting Torrence's account of what happened on the day Lockett was arrested. Lockett was arrested on December 14, 1985, the day after the murders.

**65.** This particular citation to the record in Case 2 is a letter from Townsend to Wayne Parker, the Circuit Clerk, requesting that the transcript of the suppression hearing be filed in the official record in Case 2 and thereafter transmitted to the Mississippi Supreme Court Clerk for appeal purposes.

**66.** Lockett was questioned and/or spoke to officers of the Rankin County Sheriff's Department on December 14, 1985, December 15, 1985, twice on December 16, 1985, and again December 17, 1985. The December 15th interrogation was the only statement which was admitted into evidence in both trials. The record reflects that the other interrogations and conversations were not taped nor were they introduced as evidence at either trial.

of state administrative remedies that "encouraging the full factual development in state court of a claim that state courts committed constitutional error advances comity by allowing a coordinate jurisdiction to correct its own errors in the first instance").

 In this matter, Lockett was provided the opportunity to litigate the issue of the voluntariness of his confessions at the trial level. As noted previously, the trial judge in Case 1 conducted an evidentiary hearing on the matter which lasted two days and during which many witnesses, including Lockett, testified. Both trial judges, after considering all of the evidence presented, concluded that Lockett's confessions were voluntary.[67] Indeed, Lockett has not presented any evidence of "coercive police activity [which] is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Penry v. Lynaugh, 832 F.2d 915, 918 (5th Cir.1987) (quoting Colorado v. Connelly, 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986)), reversed in part on other grounds, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).[68] Furthermore, Lockett has offered no reason why this Court should not afford a presumption of correctness, as required by 28 U.S.C. § 2254(d), to the factual findings made by the state courts. Lockett is therefore not entitled to habeas relief based on this ground.[69]

 Alternatively, the Court concludes that even if the first confession is excluded from consideration due to its al-

leged unconstitutionality,[70] the second confession, which was not given until the next day, was not tainted by any alleged illegality of the first confession. In Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the United States Supreme Court discussed whether an initial involuntary confession should preclude the use of a subsequent voluntary confession by an accused. Id. at 309, 105 S.Ct. at 1293. The Elstad Court discussed the holding of the state court on this issue:

The Oregon court, however, believed that the unwarned remark compromised the voluntariness of respondent's later confession. It was the court's view that the prior answer and not the unwarned questioning impaired respondent's ability to give a valid waiver and that only lapse of time and change of place could dissipate what it termed the "coercive impact" of the inadmissible statement. When a prior statement is actually coerced, the time that passes between confession, the change in place of interrogations, and the change in identity of the interrogators all bear on whether that coercion has carried over into the second confession.

Id. at 309–310, 105 S.Ct. at 1293. The Elstad Court also discussed the so-called "cat out of the bag" rule set forth in United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947).

"[A]fter an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvan-

---

67. Contrary to Lockett's assertion that his testimony was unrebutted, Deputy Hulon Craft testified that Lockett did not appear to be under the influence of drugs or alcohol on December 14, 1985, which was the day of his arrest and the day of the first confession: "I didn't walk up to him and look in his eyes, but just talking to him, Carl talked with plenty of clear sense and he was intelligent." Case 2 (R. 898). The trial judge could conceivably and quite easily have determined that Craft was a more credible witness than Lockett. In any event, this Court will not second-guess the factual findings made by the state court.

68. In a subsequent Fifth Circuit case, the test for voluntariness is stated as follows:

The test for determining voluntariness is well-established: Is the confession the product of

an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him.

Self v. Collins, 973 F.2d 1198, 1205 (5th Cir. 1992).

69. With regard to the "Judgment Day" comment allegedly made by Sheriff Torrence, Lockett has failed to present any credible evidence on this issue. The newspaper article quoting Sheriff Torrence is nothing more than hearsay and, therefore, is not admissible.

70. The first confession was given on December 14, 1995, the day of Lockett's arrest. Lockett claims that this confession was involuntary due to his intoxication on that day, and the Judgment Day comment made by Sheriff Torrence. Lockett makes no such claims regarding the other three confessions given on subsequent days.

tages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession may always be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed."

*Elstad,* 470 U.S. at 311, 105 S.Ct. at 1294 (quoting *Bayer,* 331 U.S. at 540–41, 67 S.Ct. at 1398). Thus, simply because an accused has "let the cat out of the bag," even if such a statement is involuntary, a subsequent statement which is voluntary and for which the accused has received proper *Miranda* warnings should not be excluded automatically. Rather, proper consideration should be given to the factors set forth in *Elstad* concerning time, place and change of identity of the interrogators.

As stated previously, Lockett was allegedly intoxicated by drugs and/or alcohol on the day of his arrest. Furthermore, the "Judgment Day" comment, if made, by Sheriff Torrence was made on the day of Lockett's arrest prior to or during his first confession. The second confession, which was taped and used against Lockett at his trials, was given a day later, presumably after Lockett would have recovered from his alleged intoxicated state on the day of his arrest. Furthermore, Sheriff Torrence was not present at the second confession. Therefore, Lockett cannot seriously claim that his second confession was induced or coerced by the "Judgment Day" comment by Torrence on the previous day. The Court therefore concludes that even if the first confession was involuntary and thus unconstitutional, a sufficient amount of time had passed and different interrogators were present during the second confession such that any perceived "taint" from the initial confession did not pass to the second confession the next day.

Alternatively, the Court concludes that this claim is procedurally barred from review by this Court.[71] In his second motion for post-

conviction relief in Case 1, the Mississippi Supreme Court concluded as follows:

> On direct appeal, Lockett "challeng[ed] the confession introduced against him as violative of the *Agee* rule [*Agee v. State,* 185 So.2d 671, 673 (Miss.1966) ] because all of the officers present when the confession was made did not testify at trial." ... This Court rejected that claim because "[t]he trial court's determination to admit Lockett's confession [was] supported by substantial evidence and we will not disturb it." ...
>
> None of the fifteen (15) grounds contained in Lockett's first application for post-conviction relief filed by his second set of lawyers assailed the voluntariness of Lockett's confession.... It is too late now to reconstitute this issue in a second and successive application for post-conviction relief.

*Lockett,* 656 So.2d at 74.

Because this claim was barred by the state court based upon an adequate and independent state ground, this Court may only consider the merits of the claim if Lockett can show cause for his failure to raise it earlier and resulting prejudice due to such failure. Lockett has failed to establish sufficient cause to excuse this procedural default. A blanket assertion that all previous counsel were ineffective is not sufficient to establish such cause. *See supra* at 235. Furthermore, as this Court has rejected the merits of the claim, by reviewing *de novo* the legal determination of the state court, Lockett has failed to show any resulting prejudice. Lockett is not entitled to habeas relief on this ground.

**Ground Twenty:** *Petitioner's confessions were obtained in violation of his Sixth Amendment right to counsel.*

Lockett asserts that under Mississippi law, his right to counsel attached when he was arrested and placed in custody on December 14, 1985. In fact, counsel was appointed for Lockett on that date. Lockett further asserts that "[t]here is no indication that Mr. Lockett was informed that counsel had been

---

71. Although the issue of procedural bar is usually discussed in the first instance, because the facts of this case were dispositive of the voluntariness question, the Court chose to discuss the merits of the issue immediately after presenting the facts.

The Court recognizes that if this issue is procedurally barred, no decision on the merits is necessary. Because of the magnitude of this case, however, the Court has set forth alternative holdings where possible.

appointed, nevertheless he waived his *Miranda* rights, and confessed when interrogated by the police." Memorandum in Support of Partial Summary Judgment at 14.

The State asserts that this claim is procedurally barred from review because Lockett did not raise it at trial, on direct appeal or in his first motions for post-conviction relief. In his second motions for post-conviction relief, the Mississippi Supreme Court held that the claim was time barred pursuant to Miss. Code Ann. § 99–39–5(2) and successive writ barred by Miss.Code Ann. § 99–39–27(9). *Lockett,* 656 So.2d at 74; *Lockett,* 656 So.2d at 78–79. The Mississippi Supreme Court reasoned:

> None of the fifteen (15) grounds contained in Lockett's first application for post-conviction relief filed by his second set of lawyers assailed the voluntariness of Lockett's confession.... It is too late now to reconstitute this issue in a second and successive application for post-conviction relief.

*Id.* at 74 (citation omitted).

 The Court concludes that Lockett's claim that his confessions were taken in violation of the Sixth Amendment is procedurally barred from review by this Court. As this Court has stated previously, Lockett may not proceed here on the assumption that all his previous counsel, or even most of them, have been ineffective for raising every single issue which he asserts in this habeas petition. Thus, having shown no cause and prejudice for his failure to raise this claim previously, and having offered no reason why it would be fundamentally unfair for the Court to consider this claim on the merits,[72] the Court concludes that it is procedurally barred from review.

 Alternatively, the Court concludes that this claim should be denied on the merits. In *Wilcher v. Hargett,* 978 F.2d 872 (5th Cir.1992), the Fifth Circuit concluded that even though counsel had been appointed for the defendant, his written waiver of his right to counsel immediately before giving a second statement to police and after his Miranda rights were properly read to him was a constitutionally valid waiver of his Sixth Amendment right to counsel. *Id.* at 876. Lockett is therefore not entitled to habeas relief on this claim because he signed written waivers before each statement that he gave to the authorities investigating the Calhoun murders.

**Ground Twenty–One:** *Petitioner's jury in Case 1 was so replete with associates of law enforcement as to deprive petitioner of his right to an impartial jury in violation of the Sixth and Fourteenth Amendments to the United States Constitution.*

Lockett asserts that ten members of the panel from which his jury in Case 1 was selected were closely associated with law enforcement. Case 1 (R. 491–92). After Lockett had exhausted his peremptory challenges, presumably to strike many of these people, Robert Fortner ("Fortner") was selected to be on the jury. Fortner's daughter worked for the Pascagoula police department in some capacity which is not stated by Lockett or the State. Fortner became the foreman of the jury in Case 1. Lockett asserts that Fortner's presence on the jury violated his right to an impartial jury under Mississippi law. Lockett asserts in conclusory fashion that the jury chosen in Case 1 was so impartial as to infringe upon his Sixth and Fourteenth Amendment rights to an impartial jury.

The State asserts that Lockett has failed to state any federal basis upon which habeas relief can be granted by this Court. The State further asserts that Lockett has failed to show a violation of Mississippi law with regard to his jury in Case 1. According to the State, the jury in Case 1 is not analogous to the jury in *Mhoon v. State,* 464 So.2d 77 (Miss.1985), upon which Lockett relies. In *Mhoon,* six of the persons who were ultimately seated on the jury were either uniformed officers or related by blood or marriage to law enforcement members. *Id.* at 81. The State also relies upon the decision by the Mississippi Supreme Court on this issue in Lockett's direct appeal in Case 1:

> In the instant case only one juror in the entire pool who had any relation to a law enforcement official actually served on the

---

72. Lockett has not asserted in any of his many submissions to this Court that he is factually innocent of the murders for which he was convicted and sentenced to death.

final jury. Granted, this juror, whose daughter was employed by the Pascagoula Police Department (we do not know whether she was an officer), served as foreman of the jury. This contrasts with the extreme situation in *Mhoon* where the foreman of the jury was a uniformed policeman and six of the jurors who sentenced *Mhoon* to death were related by blood or marriage to policemen, highway patrolmen, or justice court judges. Accordingly, this assignment of error is without merit.

*Lockett,* 517 So.2d at 1332.

▇▇▇ The Court agrees with the State, and consequently with the Mississippi Supreme Court, that Lockett has failed to show that he was convicted and sentenced by a jury which was so impartial as to deny his Sixth and Fourteenth Amendment rights to a fair and impartial jury. For this reason, the Court concludes that Lockett is not entitled to habeas relief based upon this ground.

**Ground Twenty–Two:** *The excusal of member of the venire Crear in Case 1 without the showing of predisposition against the death penalty required in Wainwright v. Witt violated petitioner's rights under the Sixth Amendment to the United States Constitution.*

Lockett asserts that Crear should not have been excused from the jury venire for cause in Case 1 because the trial judge failed to make an adequate inquiry into whether Crear's performance on the jury would be substantially impaired because of his beliefs. The State asserts that the findings of the trial court and the Mississippi Supreme Court on this issue are entitled to a presumption of correctness. The State further asserts that because this claim was fully litigated at trial and on direct appeal, Lockett is not entitled to an evidentiary hearing on this issue.

The Mississippi Supreme Court concluded as follows concerning the excusal of Crear from the venire:

Here, during voir dire, the State asked if any of the jurors believed they would be unable to follow the law and evidence dictating infliction of the death penalty. Juror No. 8, Mr. Crear, stated that he did not believe in the death penalty. Afterwards, defense counsel asked the jurors if they could put aside strong, moral religious beliefs about the death penalty and follow the instructions given to them by the court. Mr. Crear responded that he could not. The State thereafter challenged Juror Crear for cause, and the court sustained the challenge to which defense counsel objected.

Applying Crear's responses to the test set forth in *Witt* and recognized by this Court in *Fuselier* [*v. State,* 468 So.2d 45 (1985)], it certainly appears that his views on punishment would not only substantially impair but also prevent him from performing his duties as a juror by following instructions of law permitting the jury to invoke the death penalty. As such, this assignment of error is without merit.

*Lockett,* 517 So.2d at 1335. Although not recognized by the Mississippi Supreme Court, the record presented to this Court also reflects that Crear was a preacher. Case 1 (R. 479).

▇▇▇ The standard for excusing a prospective juror for cause because of his views on the death penalty is whether the juror's views would prevent or substantially impair the performance of that juror's duties in accordance with the instructions given by the trial court and the oath taken by the juror. *Fuller v. Johnson,* 114 F.3d 491, 501 (5th Cir.1997) (citing *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985)).

[N]ot all who oppose the death penalty are subject to removal for cause in capital cases; those who firmly believe that the death penalty is unjust may nevertheless serve as jurors in capital cases so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law.

*Lockhart v. McCree,* 476 U.S. 162, 176, 106 S.Ct. 1758, 1766, 90 L.Ed.2d 137 (1986). Finally, "[a] trial judge's finding of bias during voir dire is a determination of fact, subject to a presumption of correctness on collateral review, ... under the old 28 U.S.C. § 2254(d) ..." *Fuller,* 114 F.3d at 500–501; *see also Russell v. Collins,* 998 F.2d 1287, 1293–94 (5th Cir.1993), *cert. denied,* 510 U.S. 1185, 114 S.Ct. 1236, 127 L.Ed.2d 580 (1994).

The Court concludes that Lockett has failed to offer any reason why this Court should not afford a presumption of correctness to the determination by the trial judge that Crear should be excused for cause. Although Lockett asserts that there was no adequate inquiry into whether Crear's performance on the jury would be substantially impaired, the Court must give great deference to the "trial judge who sees and hears the jurors." *Witt,* 469 U.S. at 426, 105 S.Ct. at 853. In this particular instance, the prospective juror was a preacher who stated that he could not put aside his strong moral and religious beliefs about the death penalty and follow the instructions given by the Court. Under these circumstances, the Court concludes that Lockett is not entitled to habeas relief based upon this ground.

**Ground Twenty–Three:** *Petitioner's death sentences are tainted by racial prejudice and discrimination in violation of the Eighth and Fourteenth Amendments to the United States Constitution.*

Lockett asserts that his death sentences were influenced by the fact that he is black and his victims were white. He presents a study entitled "Factors Affecting Death Penalty Decisions in Mississippi" by Richard A. Berk and Joseph K. Lowery to support this assertion.

The State asserts that Lockett must show that his juries discriminated against him personally in order to obtain relief. The State claims that statistical studies are insufficient evidence to prove individual discrimination.

The Court agrees with the State that statistical evidence is insufficient to prove individual racial discrimination. *See McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *King v. Puckett,* 1 F.3d 280, 286–87 (5th Cir.1993). Absent any specific proof of racial discrimination against him personally,[73] the Court concludes that Lockett is not entitled to habeas relief on this ground.

**Ground Twenty–Four:** *In both of petitioner's trials, the death sentence was disproportionate and was the consequence of emotion and caprice.*

Lockett asserts that the death sentences imposed upon him were disproportionate because he was young, from a severely deprived background, and he suffered from numerous mental and physical problems. The State asserts that the Mississippi Supreme Court conducted a proportionality review in each of Lockett's cases, and that this finding of fact is entitled to deference by this Court. Lockett, in rebuttal, asserts that the proportionality review conducted by the Mississippi Supreme Court is a question of law which this Court must review de novo.

The Court has reviewed the decisions by the Mississippi Supreme Court on this issue. *Lockett,* 517 So.2d at 1338–40; *Lockett,* 517 So.2d at 1355, 1357–58. The Court finds that the Mississippi Supreme Court conducted a meaningful proportionality review. For this reason, the Court concludes that Lockett is not entitled to habeas relief based upon this ground.

**Ground Twenty–Five:** *Mississippi's capital sentencing scheme is unconstitutional as a whole.*

Lockett asserts that "the Mississippi capital sentencing scheme suffers constitutional infirmities which are too numerous in number to sanction its continued use and that these infirmities are endemic to the sentencing statute itself." Memorandum in Support of Motion for Evidentiary Hearing at 46. Lockett then attempts to list these alleged infirmities, setting forth eleven separate reasons why this Court should declare the Mississippi capital sentencing scheme to be unconstitutional. Curiously, although this ground is contained in Lockett's Motion for Evidentiary Hearing, Lockett does not state what evidence he would present if he received a hearing on this issue.

The Court concludes that Lockett has not asserted a sufficient basis for this Court to declare the entire Mississippi capital sentencing scheme to be unconstitutional. This

---

**73.** In a previous portion of this opinion, the Court rejected Lockett's claim of racial discrimination in the jury selection process in each of his cases. *See supra* at 220–23. Therefore, Lockett's reliance on this same evidence to support habeas relief on this ground is not well-founded.

Court has concluded previously in this opinion that Lockett is entitled to habeas relief with regard to his death sentence for the murder of John Calhoun in part because the Mississippi Supreme Court has been less than clear in setting forth when a heinous, atrocious and cruel instruction should be given in murder cases involving quick death with little or no warning to the deceased. This finding, however, is not a comment on the entire Mississippi capital sentencing scheme and should not be construed as such. Lockett is not entitled to habeas relief based upon this ground.

### V. *Conclusion*

For the reasons set forth in this opinion, the Court concludes that Lockett is only entitled to habeas relief from his sentence of death for the murder of John Calhoun. All other grounds for relief should be denied.

IT IS THEREFORE ORDERED that the Petition Under Title 28 U.S.C. Section 2254 for Writs of Habeas Corpus by a Petitioner in State Court Custody Under Sentences of Death should be granted in part such that the sentence of death imposed on Lockett for the murder of John Earl Calhoun should be vacated.

IT IS FURTHER ORDERED that the State of Mississippi shall institute resentencing proceedings in the appropriate trial court in Mississippi within ninety (90) days of the entry of this opinion.

IT IS FURTHER ORDERED that all other grounds for relief raised in the Petition should be denied.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment should be granted in part such that the sentence of death imposed on Lockett for the murder of John Earl Calhoun should be vacated; all other issues raised in the Motion for Partial Summary Judgment should be denied.

IT IS FURTHER ORDERED that the Motion for Evidentiary Hearing should be denied in part.

IT IS FURTHER ORDERED that the Stay of Execution previously entered in this cause shall remain in effect pending any appeal of this matter to the United States Court of Appeals for the Fifth Circuit.